THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. JOHN THUL.

1. PERSONAL INJURIES; *Evidence Proving a Cause of Action.* Where the evidence showed that the plaintiff, a section hand in the employ of the defendant railroad company, while in the performance of his duties, along with other employés of the railroad company, took a hand-car off the railroad track to permit a train belonging to the defendant to pass, and while standing by the side of the track the employés of the railroad company in charge of the engine permitted water to escape from the engine and to be thrown into the plaintiff's face and eyes, whereby injury occurred, *held*, that the evidence proved a cause of action in favor of the plaintiff and against the railroad company.

2. ERRONEOUS INSTRUCTION *as to Expert Testimony.* In such a case, where the court appointed competent medical experts to examine the plaintiff's eyes, and they made such examination, and testified in substance that no great or material injury could have resulted from the water being thrown into the plaintiff's eyes, and the court instructed the jury, among other things, with regard to "expert testimony," that "in all cases such testimony should be received and weighed with caution," and the jury found a verdict in favor of the plaintiff for $2,000, *held*, that such instruction of the court was erroneous, and may have misled the jury into finding a verdict for a greater amount of damages than the plaintiff was entitled to.

3. TESTIMONY OF EXPERTS, *How to be Considered.* The testimony of experts is to be considered like any other testimony; is to be tried by the same tests, and to receive just as much weight and credit as the jury may deem it entitled to, when viewed in connection with all the other circumstances; and its weight and value are questions for the jury, and not for the court.

*Error from Shawnee District Court.*

ACTION by *Thul* against *The Railroad Company*, to recover damages for personal injuries. Trial at the October Term, 1883, and judgment for plaintiff for $2,000 and costs. The defendant brings the case to this court. The opinion states the material facts.

*A. A. Hurd, Robt. Dunlap*, and *W. C. Campbell*, for plaintiff in error; *Geo. W. McCrary*, general counsel.

*Case & Curtis*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John Thul against the Atchison, Topeka & Santa Fé railroad company, to recover damages for injuries alleged to have been caused through the negligence of the agents and servants of the defendant in operating its railroad. The alleged injuries occurred about December 15, 1881, and were principally to the plaintiff's eyes, and were alleged to have been caused by the defendant's agents and servants throwing hot water or steam into the plaintiff's face and eyes, from an engine belonging to the defendant. The case was tried before the court and a jury, and the jury rendered a general verdict in favor of the plaintiff and against the defendant, assessed the plaintiff's damages at $2,000, and also made numerous special findings in the case. The defendant moved for judgment upon the special findings, and also filed a motion to set aside the verdict and findings, and for a new trial; which motions were overruled by the court, and judgment rendered in favor of the plaintiff and against the defendant for $2,000 and costs. To reverse this judgment the defendant now prosecutes a petition in error in this court.

The first point made in this case is, that the evidence is not sufficient to sustain any judgment or verdict in favor of the plaintiff and against the defendant, and therefore that the judgment of the court below should be reversed. · We think

the plaintiff in error, defendant below, is mistaken with regard to this matter; and yet we are inclined to think that there was such error committed in the case as to require a reversal of the judgment of the court below. It appears that prior to and on December 15, 1881, the plaintiff, Thul, was in the employ of the defendant as a section hand. He was then partially blind from disease of the eyes, which he had contracted in the year 1861. On or about December 15, 1881, the plaintiff, with other laborers in the employ of the defendant, about twenty-two or twenty-three in number, started on three hand-cars to go from Topeka to their place of work, a few miles east of Topeka, and after passing over the track about one-quarter of a mile, they met one of the defendant's trains on the same track, coming from the east. This train consisted of an engine, a tender, and a few coal cars. As to which end of the engine was in front, the evidence does not clearly show, but probably the end with the pilot or "cow-catcher" was in front. When the men on the hand-cars saw the train coming they took the hand-cars off the track, placed them on the north side thereof, and they all stood there until the train passed. They were far enough away from the track to avoid all danger of being struck by any portion of the train. There were two or three men in the cab of the engine, one of whom was looking out at the time. Whether the other one or two looked out or not at any time is not clearly shown by any direct evidence. Just as the engine passed these men with the hand-cars, a quantity of water, or steam and water, was thrown from the engine, some of which went into the face and eyes of the plaintiff, Thul. Of course the plaintiff was injured, but whether much, or little, is a very doubtful question—probably not very much; but whatever the injury may have been, we think he is entitled to recover for it, and it constitutes the basis of this action. We think there was ample evidence to sustain a verdict and judgment in favor of the plaintiff and against the defendant for some amount; and hence the court below did not err in overruling the defendant's demurrer to the evidence, and did not err in overruling the defendant's motion for judg-

17—32 KAS.

ment, and would not have erred in overruling the defendant's motion for a new trial, if no other ground had been interposed to support such motion than that no cause of action was proved in favor of the plaintiff.

The principal ground, however, upon which the defendant claims that no verdict or judgment should have been rendered against it, is that there was no sufficient evidence introduced to show that the man who looked out of the cab was the engineer, or to show that the engineer saw any of the men on the side of the track, or that he knew that they were near when the water and steam were permitted to escape from the engine; and it claims that presumptively no one but the engineer had any authority to permit steam or water to escape from the engine, and therefore presumptively that he was the one who did it.    The jury, however, found that the engineer did see the men on the side of the track before the water or steam was permitted to escape; and we think the evidence will sustain such a finding.    It was undoubtedly the duty of the engineer to look ahead of his engine and on both sides, and to know what was in front and near the engine on both sides, and in all probability he did see these men on the side of the track, and knew that they were there; and there was not a particle of evidence introduced in the case tending to show otherwise. He may have been the very man whom the men on the side of the track saw looking out of the cab when the engine passed.

We think there was ample evidence to show that the plaintiff on his part was free from all fault and negligence, and the jury so found; and we also think that there was ample evidence to show that the defendant on its part and through its employés was guilty of negligence, and this the jury also found; and therefore we think that the evidence showed that the plaintiff was entitled to recover something.

But a still more serious question arises: Was not the jury misled by a certain instruction of the court below? and being so misled, did they not award the plaintiff excessive damages? The instruction reads as follows:

"*Ninth.* There has been some evidence in the case, known as 'expert testimony.' In respect to such testimony I instruct you that its value depends upon the learning and skill of the expert witness, and on the nature of the subject of investigation. The value of such testimony varies with the circumstances of each case, and of these circumstances the jury must be the judges; and you must determine whether great or little weight is to be accorded to it. But in all cases such testimony should be received and weighed with caution."

The defendant excepted to this instruction, but really complains of only the last sentence thereof, to wit: "But in all cases, such testimony [that of experts] should be received and weighed with caution." Counsel for the defendant ask: "Why should the testimony of experts in *all* cases be received and weighed with caution? Is there such a probability of mistake in science that opinions based upon facts are to be received with caution?" We think this question is pertinent in the present case, for the reason that the defendant based its whole defense almost entirely upon the testimony of medical experts; and these medical experts were not ignorant men brought in merely by the defendant itself to testify as partisans in its defense or to prove its case, but they were educated physicians and surgeons of long experience, eminent in their profession, and one of them was not only a physician and surgeon, but was also an oculist who had made diseases of the eye a specialty for several years, and they were all appointed by the court itself to make a professional examination of the plaintiff's eyes, because of their skill and competency in such matters. They made the examination and testified in the case, stating what they saw and observed, with their opinions and conclusions; and this is a portion of the "expert testimony" which the court below instructed the jury "should be received and weighed with caution."

If the testimony of these witnesses is to be relied on, the plaintiff should not have recovered any very large amount of damages; indeed, he should have recovered but very little more than nominal damages. These witnesses testified that the plaintiff's blindness could not have been caused by water and

steam as he claims that it was, but that it was caused by many years of disease of the eyes, by inflammation, granulation, irritation, and consequent opacity of the cornea.   The plaintiff testified that his eyes and face were burned and scalded by hot water and steam, but the expert witnesses testified that this could not be true, for the reason that there are no evidences of any loss or destruction of tissue; that the effect of burning or scalding is immediate, while it is shown by the evidence in this case that the plaintiff continued to work, or try to work, as a section hand for two days after the water was thrown in his eyes; that water, if not hot enough to burn or scald, could not produce blindness such as the plaintiff is afflicted with, and that opacity of the cornea, without destruction of the tissues, and such as the plaintiff is afflicted with, cannot be produced from any cause within a few days, or a few weeks, or a few months, or even within the longest period of time within which the plaintiff claims that he became blind, or nearly blind, after the water was thrown in his face and eyes, but can be produced only by disease for years.

As before stated, the plaintiff was partially blind before this water was thrown in his eyes; and he is not totally blind yet; but he cannot see as well now as he could before the water was thrown into his eyes.

This case has been twice before a jury, and this is the second time that it has been to this court. (*A. T. & S. F. Rld. Co. v. Thul*, 29 Kas. 465.)   On the first trial, the jury found the plaintiff's damages to be $400, while on the second and last trial, the jury found the plaintiff's damages to be $2,000, as before stated.   Evidently the jury paid but very little attention to the " expert testimony" of the physicians and surgeons appointed by the court, and who testified in this case; and their reason for so doing may have been the above-quoted instruction given to them by the court.   We think that such testimony should have been given due and proper weight, and should not have been "received and weighed with caution." In the case of *Carter v. Baker*, 1 Sawyer (U. S. C. C.) 512, the presiding judge laid down the following rule:

"The testimony of experts is to be considered like any other testimony; is to be tried by the same tests and receive just as much weight and credit as the jury may deem it entitled to, when viewed in connection with all the circumstances."

We think this is probably as good a general rule as any that could be adopted. Mr. Lawson, in his work on Expert and Opinion Evidence, page 240, states the rule as follows:

"The testimony of experts is entitled to the same credit, is to be tested by the same rules as are applied to the evidence of other witnesses, and should have weight with the jury according to their opportunities and qualifications; but it is not conclusive."

Mr. Rogers, in his work on Expert Testimony, page 65, § 42, makes the statement that —

"It is evident that the value of expert testimony depends on the learning and skill of the expert, and on the nature of the subject of investigation. If the subject of inquiry relates to the cause, nature or effect of disease, for instance, the opinions of eminent or learned physicians would be entitled to the very highest consideration."

But in another part of the same section, Mr. Rogers uses the very language, with the addition of the word "great" which the court in the present case used in the foregoing instruction. Mr. Rogers says: "But in all cases the testimony of experts is to be received and weighed with great caution." This language just quoted might be proper in some cases, but it certainly cannot be proper in all cases, and it cannot be proper in the present case. We think the language first quoted from Mr. Rogers's work on Expert Testimony is correct. The opinions of eminent and learned physicians and surgeons and oculists are entitled to great consideration, at least where they have made a personal examination of the subject, as in the present case. In the case of *Anthony v. Stinson*, 4 Kas. 221, this court used the following language:

"It is not for the court to instruct the jury as to what part of the testimony before them shall control their verdict; but the jury must weigh all the testimony before them, decide as to its credibility, and as to the weight which should be given to it in making up the verdict. The testimony of experts, or

professional witnesses, is often very important, and justly entitled to great weight in a cause; but it must have its legitimate influence by enlightening, convincing and governing the judgment of the jury, and must be of such a character as to outweigh, by its intrinsic force and probability, all conflicting testimony."

While many courts speak disparagingly of some. kinds o expert testimony—that with regard to handwriting, for instance—yet we think that all courts hold that the testimony of competent medical experts is entitled to great respect and consideration. (*Pannell v. Commonwealth*, 86 Pa. St. 260; *Eggers v. Eggers*, 57 Ind. 461; *Cuneo v. Bessoni*, 63 id. 524; *Jarrett v. Jarrett*, 11 W. Va. 584, 626; *Thomas v. The State*, 40 Tex. 65; *Pitts v. The State*, 43 Miss. 472, 480; *Templeton v. The People*, 10 Hun, 357; *Choice v. The State*, 31 Ga. 424, 481; *Flynt v. Bodenhamer*, 80 N. C. 205; *Getchell v. Hill*, 21 Minn. 471; *Wood v. Barker*, 49 Mich. 295, 298; Rogers on Expert Testimony, 268, 269.)

See also with reference to expert testimony, the authorities heretofore cited, and *Humphries v. Johnson*, 20 Ind. 190; *Tinney v. N. J. Steamboat Co.*, 12 Abb. Pr. N. S. (N. Y.) 1.

There are many cases in which we would think that the language used by the court below in the foregoing instruction would not be materially erroneous; for in many cases expert testimony founded merely upon the opinions of expert witnesses would be almost wholly worthless. We have all seen such cases; and in such cases the expert testimony should of course "be received and weighed with caution;" but the weight and value of such testimony are questions for the jury; and it is not for the court to determine or to instruct the jury as to how much or how little weight should be given to such testimony. In the present case, we think the expert testimony of the physicians and surgeons who were in fact appointed by the court, and who made a personal and professional examination of the. plaintiff's eyes, is entitled to great consideration, and that the court below erred when it instructed the jury that such testimony should "be received and weighed with caution." Believing that the foregoing instruction is erroneous, and that

it may have misled the jury, the judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.