# INDIANAPOLIS TRACTION AND TERMINAL COMPANY
## *v.* TAYLOR.

[No. 8,067.   Filed January 7, 1914.]

1. STREET RAILROADS.—*Injuries to Persons on Tracks.—Negligence. —Contributory Negligence.—Jury Question.*—In an action for injuries caused by a street car colliding with plaintiff's wagon, where there was evidence showing that plaintiff drove upon the track at a place where the street was not lighted, to pass a coal wagon, and continued driving on the track for a distance of about

310     APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Taylor—55 Ind. App. 309.

seventy-five feet, and that before he was able to pass the wagon and turn off the track defendant's car approached from the rear at the rate of thirty-five to forty miles an hour, without sounding a gong or giving other warning of its approach, and struck plaintiff's wagon, and that before going on the track plaintiff looked, but saw no car, although the car was lighted and he had an unobstructed view for a distance of three or four squares, and other evidence showing that plaintiff turned upon the track about fifteen feet ahead of the car, that the motorman first saw him then and that it was impossible to prevent the collision, that the car was running at about eight miles an hour, and that the gong was repeatedly sounded, the questions of defendant's negligence, and contributory negligence by plaintiff, were properly submitted to the jury. p. 311.

2. WITNESSES.—*Experts.*—*Credibility.*—*Weight of Testimony.*—An expert witness is upon the same footing as any other witness in so far as his credibility is concerned, and the weight of his testimony should be determined by the same rules, so far as applicable, which apply to the testimony of other witnesses. p. 313.

3. TRIAL. — *Instructions.* — *Testimony of Experts.* — Instructions should be free from any tendency to discredit expert witnesses and to disparage their testimony, hence an instruction that in effect told the jury that it had a right to reject the testimony of the expert witnesses, or of any of them, if from the evidence it thought it ought to do so, was erroneous, since it may have been accepted by the jury as a warrant to reject such testimony regardless of its truth. pp. 313, 314.

4. EVIDENCE.—*Weight of Evidence.*—*Rejection.*—A jury has no right to arbitrarily reject or refuse to consider the testimony of any witness; but if there is anything in the character, appearance or conduct of the witness, or in his testimony when considered in the light of other testimony, and the circumstances of the case, that would make his testimony seem unworthy of belief, or if he has been successfully impeached or contradicted, the jury may reject it to the extent that they regard it as false. p. 314.

5. TRIAL.—*Instructions.*—*Province of Jury.*—*Testimony of Experts.* —An instruction that the opinions of experts are not admitted for the purposes of controlling the judgment of the jury, but to be considered for what they are worth in the opinion of the jury when considered in connection with the other evidence, invaded the province of the jury. p. 315.

6. EVIDENCE.—*Consideration by Jury.*—It is the exclusive province of jurors to decide what weight and probative force they will give to each item of evidence, and while a jury is not bound to give controlling effect to any particular evidence, it may do so, if it believes it should have such effect. p. 315.

NOVEMBER TERM, 1913.          311

Indianapolis Traction, etc., Co. *v.* Taylor—55 Ind. App. 309.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by John F. Taylor against the Indianapolis Traction and Terminal Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*F. Winter, W. H. Latta, L. Ert Slack* and *M. E. Foley,* for appellant.

*Charles B. Clarke, Walter C. Clarke* and *Miller & White,* for appellee.

*E. A. McAlpin* and *Miller, Shirley, Miller & Thompson,* *Amici Curiæ.*

Lairy, C. J.—Appellee, as plaintiff below, recovered a judgment against appellant for damages resulting from personal injuries received by him, caused by one of appellant's cars colliding with a wagon in which he was riding. The only error relied on for reversal is the action of the trial court in overruling appellant's motion for a new trial. The negligence charged against appellant is that it carelessly and negligently operated its car at a high and dangerous rate of speed and that it failed to sound the gong or to give any other warning of its approach and that while appellee was driving east on West Michigan Street and while he was in the act of driving around a coal wagon which was proceeding in the same direction, appellant's car approached from the rear and was negligently run against the wagon on which plaintiff was riding.

The evidence shows that there is a double street car track on West Michigan Street where the collision occurred and that appellant's car was running east on the south track. The collision occurred after dark at a place where the street was not lighted. The street car was lighted and there was an unobstructed view to the west for three or four squares. The evidence on behalf of appellee shows that he was on the south side of the street driving east and that a coal wagon was just ahead of him on the same side of the street; that he turned to the north

upon the tracks of the street car company and drove east thereon a distance of about seventy-five feet for the purpose of passing the coal wagon and that before he was able to pass the wagon and turn off the track, appellant's car approached from behind and struck the wagon causing his injury; that the car at the time was running at a speed of thirty-five to forty miles an hour, and that no gong was sounded or other warning given of its approach. Appellee testified that he looked back twice after he turned upon the track and that he did not drive over forty feet without looking behind him, and that he did not see or hear the car until the wagon was struck. The evidence on behalf of appellant shows that appellee, immediately before the collision, was on the north side of the street and that he turned across the street toward the south at a point about fifteen feet in front of the moving car; that the motorman first saw the wagon as it turned upon the track and that it was impossible to stop the car in time to prevent a collision; that the car was running at the rate of about eight miles an hour and that the gong was repeatedly sounded as the car approached the place where the collision occurred. Under this evidence the court properly submitted the question of appellant's negligence to the jury and also the question as to whether appellee was guilty of contributory negligence. *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942; *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490, 77 N. E. 945; *Pittsburgh, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, 87 N. E. 40.

As bearing upon both of the questions of fact thus submitted, the speed of the car immediately prior to the collision was a very important matter. One witness who had no experience in the operation of cars and who possessed no expert knowledge on that subject, testified that the car was running at the rate of thirty-five or forty miles an

NOVEMBER TERM, 1913.    313

Indianapolis Traction, etc., Co. v. Taylor—55 Ind. App. 309.

hour.   On behalf of appellant, two or three witnesses testified that the car was not running faster than eight or ten miles an hour.   These witnesses had all had experience in the operation of cars and professed to have some expert knowledge on the subject of their speed.   Besides this, one witness testified as an expert to the effect that he had made tests of cars of a similar type to the one connected with this accident and that a car of that type is not capable of attaining a speed in excess of twenty-one miles an hour. Under this state of the evidence, the court gave to the jury a number of instructions in regard to the rules to be observed in weighing the evidence and determining the credibility of the witnesses.   Among the instructions so given was one particularly referring to expert witnesses which is as follows:   ''No. 11.   The opinions of expert witnesses are admissible in evidence for the consideration of the jury. The opinions of such witnesses are not admitted for the purpose of controlling the judgment of the jury, but to be considered for what they are worth in your opinion when considered with the other evidence in the case.   If you think from all the evidence in the case that you ought to reject the testimony of the expert witnesses or any of them, you have the right to do so.''   It has been held that an expert witness stands upon the same footing as any

2.   other witness in so far as his credibility is concerned and that the weight of his testimony should be determined by the same rules, so far as applicable, which apply to the testimony of other witnesses.   *Eggers* v. *Eggers* (1877), 57 Ind. 461; *Humphries* v. *Johnson* (1863), 20 Ind. 190; *Cuneo* v. *Bessoni* (1878), 63 Ind. 524.   Instructions which have a tendency to discredit expert witnesses

3.   and to disparage their testimony have been frequently held to be erroneous.   *Atchison, etc., R. Co.* v. *Thul* (1884), 32 Kan. 255, 4 Pac. 352, 49 Am. Rep. 484; *Langford* v. *Jones* (1890), 18 Or. 307, 22 Pac. 1064; *Rivard* v. *Rivard*

314 APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Taylor—55 Ind. App. 309.

(1896), 109 Mich. 98, 66 N. W. 681, 63 Am. St. 566. By the instruction under consideration, the jury was told that it had a right to reject the testimony of the expert witnesses or any of them, if from the evidence it thought it ought to do so. It is the duty of the jury to consider all of the evidence permitted to go to it by the court and it has no right, arbitrarily, to reject or to refuse to consider the testimony of any witness. If there is anything in the appearance or conduct of a witness or the character of his testimony which leads the jury to believe that he is testifying falsely; or, if his testimony, when considered in the light of the other evidence and the circumstances of the case, seems to the jury to be incredible and unworthy of belief; or if he is successfully impeached or contradicted by other credible witnesses, the jurors may reject his evidence in whole or in part because they believe it to be untrue or believe the witness to be unworthy of credit. Under such circumstances the jurors may receive the testimony or may reject it depending on whether they regard it as true or false. If found true, it should be considered; if found false, it should be discarded. A court should not by its instructions give jurors to understand that they have a right to reject the testimony of a witness simply because they think they ought to do so. The jurors might take such an instruction as a warrant to reject testimony regardless of its truth, if such testimony stood in the way of a verdict which their sympathies prompted them to return. We do not think that the jury would understand this instruction to mean that it had the right to reject the testimony of a witness in case such testimony was considered unworthy of belief and for no other reason, but, even if it could be given such a meaning, that rule does not apply to the testimony of expert witnesses with any greater force than to the testimony of any other witness, and there was no reason for limiting the instruction to the expert witnesses.

By this instruction, the jury was further told that the opinions of expert witnesses were not admitted for the purposes of controlling the judgment of the jury but to

5. be considered for what they were worth in the opinion of the jury when considered in connection with the other evidence in the case. By this part of the instruction, we think that the court invaded the province of the jury. It is the province of the court to determine what matters shall go to the jury as evidence, and it may also direct the jury to consider certain evidence only in connection with certain issues to which it is applicable; but it is for the jury alone to determine what weight and probative force it will give to the evidence. All evidence is admitted for the purpose of affecting the minds of the jurors in some way. It is possible that the testimony of a witness or of a class of witnesses might be so clear and convincing as to exert a controlling influence on the minds of the

6. jurors. It is the exclusive province of jurors to decide what weight and probative force they will give to each item of evidence; and in so doing they determine the extent to which such evidence shall influence or control their action. The jury is not bound to give a controlling effect to any particular evidence, but it may do so, if in the opinion of the jury it should be given that amount of weight. The Supreme Court has held that it was error for the court to instruct the jury that in a doubtful case the opinions of experts ought to control. *Humphries* v. *Johnson, supra.* The converse of the proposition must necessarily be true. It is not for the court to say that the opinion of such witnesses shall or shall not control. It is the province of the jury to determine what force and effect shall be given to such opinions.

Other questions are presented by the record, but as the same questions may not arise at another trial, they are not considered in this opinion.

For error in giving the instruction No. 11, the judgment is reversed with directions to grant a new trial.

NOTE.—Reported in 103 N. E. 812. On the general question of injuries by street car collisions with vehicles or horses, see 25 L. R. A. 508. As to the duty and liability of a street railway, as to vehicles moving along its tracks, see 7 Ann. Cas. 1127; 18 Ann. Cas. 510. See, also, under (1) 36 Cyc. 1616, 1624, 1625; (2) 17 Cyc. 262; (3, 5) 38 Cyc. 1737; (4) 38 Cyc. 1518, 1522; (6) 38 Cyc. 1516.