[Civil No. 2698.  Filed December 17, 1928.]

[272 Pac. 647.]

SECURITY BENEFIT ASSOCIATION, a Fraternal Benefit Society, Appellant, v. NANCY SMALL, Appellee.

Messrs. Sutter & Roche (Mr. A. W. Fulton and Mr. Geo. R. Allen, of Counsel), for Appellant.

Mr. Alexander Murry and Mr. Frank E. Thomas, for Appellee.

McALISTER, J.—Nancy Small brought this action against the Security Benefit Association, a fraternal benefit society, to recover the sum called for by a beneficiary certificate issued by that organization to her son, Charles S. Pierce. A verdict for the full amount sought, $2,000, was returned by the jury and from a judgment entered thereon and the order denying its motion for a new trial the association appeals.

The beneficiary certificate, which is in effect an insurance policy, was applied for on April 23d, 1924, and delivered on May 14th in Long Beach, California, where Pierce lived. It named Sadie Pierce, wife, as the beneficiary, but Nancy Small, mother, was later substituted. The insured died on June 9th, 1926, at Warren, Arizona, from pulmonary tuberculosis. All dues called for by the certificate up to that time had been paid and within the proper period thereafter the beneficiary made and filed the necessary proofs of death but the association declined to pay the benefits, claiming that Pierce was not in good health when he applied for and accepted the beneficiary certificate. If this claim be true, under various provisions of the application, the certificate itself, and the constitution and laws of the Society the Association was not liable. Hence, the ultimate fact the superior court was called upon to determine was whether Pierce was in good health at the time he applied for and accepted the certificate, and in the course of the trial which re-

sulted in a decision that he was, appellant contends that the court committed several errors in admitting and rejecting testimony and in giving instructions.

The first error assigned is based upon a ruling sustaining an objection to a question propounded to appellee upon cross-examination. She had testified on direct examination that she, her husband, her son and his wife lived in the same home in Long Beach, California, and that "on the 14th day of May, 1924, he (son) was in good health." Immediately following this she stated on cross-examination that they remained in Long Beach until July 10th, or a little less than two months following May 14th, whereupon appellant's counsel inquired "Why did you return to Arizona on the 10th of July?" Appellee objected upon the ground that it was not proper cross-examination but purely defensive matter. It was known by all connected with the case that Pierce had died of pulmonary tuberculosis and the declared purpose of the question was to ascertain first and as a preliminary matter whether they returned to Arizona for his health, and, in case the answer was that they did (as appellant from his knowledge of the case anticipated it would be), follow it up by inquiring whether he was then suffering from tuberculosis or any other insidious disease, and if so how long since its symptoms were first observed by her. It is a matter of common knowledge that tuberculosis is a lingering disease so insidious in character that it may and usually does creep upon its victim and secure a firm hold before he realizes it. Hence, if the answer had disclosed that the return to Arizona had been for his health and that his trouble was tuberculosis, it seems clear that appellant should have been permitted to trace it back, step by step, and disclose to the jury how near its inception came to May 14th when she had positively testified he was in good health. Thus viewed it was

cross-examination on the vital issue of the case and was clearly unobjectionable. If the inquiry had disclosed that they did not return to Arizona for his health, or that he was suffering from some disease whose presence is usually discovered in its inception and whose course is run in a short space of time, his state of health then would have had no relevancy to his state of health on May 14th, as contended by appellee, but it is apparent that it might have if he were suffering from a lingering illness whose beginning may have been prior to the latter date.

The sole defense to the action was that Pierce was not in good health when he applied for and accepted the certificate and inasmuch as there was in the evidence when the question was propounded nothing indicating that he was not in good health on both these dates it is argued that it was an attempt to bring out this defense in advance and for this reason was improper cross-examination. This is likewise without merit because appellee's testimony that he was in good health on May 14th rendered admissible any fact that might throw light on his condition at that time, and though the immediate purpose of the question was to obtain information as to his condition on July 10th, this was true only because it was a necessary preliminary to the accomplishment of the ultimate purpose, the ascertaining of his condition on May 14th. This brought it clearly within the scope of the direct examination and rendered it unobjectionable even though it did have the effect of developing defensive matter on cross-examination, for the rule is thus stated in 28 R. C. L. 605:

"If a question is within the scope of the direct examination it is not objectionable on cross-examination because it tends to establish a defense to the action."

See, also, *Ah Doon* v. *Smith*, 25 Or. 89, 34 Pac. 1093; *Vogel et al.* v. *Harris et al.*, 112 Ind. 494, 14

N. E. 385; *West Chicago St. R. Co.* v. *Reddy,* 69 Ill. App. 53; *Rush* v. *French,* 1 Ariz. 99, 139, 25 Pac. 816; *Graham* v. *Larimer,* 83 Cal. 173, 23 Pac. 286.

Assignments 2 and 3 attack the rulings of the court sustaining objections to two interrogatories and their answers appearing in the deposition of Dr. J. Hoyt Huckins, who treated Pierce prior to his return to Arizona. The first of these, number 15, asked him to state any other matters or things connected with his professional care of Charles S. Pierce that came to his knowledge as a physician and tended to show the cause or origin of the disease with which he found him suffering while under his care. To this he answered:

"Either his mother or wife told me that Mr. Pierce had had influenza some time the first part of 1924, and this sickness may have been contributory to his tubercular condition."

The second one, number 18, requested him to tell what in his opinion from his examination of Mr. Pierce and the history given him by Pierce of his physical condition and previous illness was the source or cause of the disease and the time when the disease from which he found Pierce suffering commenced. To this he gave the following answer:

"In my opinion from my examination of Mr. Pierce and the history given by him of his physical condition and previous illness and the kind of work which had been done by him previous and the statement of his mother or his wife which I have referred to, that he had had influenza during the early part of 1924, the source of his tuberculosis may have been the fact that he had worked in the mines during the greater part of his life, or it may have been that the influenza combined with the effect of working in the mines so long, was the cause of the disease and I have no opinion as to the time when the disease from which I found him suffering commenced."

Both interrogatories were objected to because they were too general and the answers upon the ground that they were based upon hearsay. Whether the objections to the questions were well grounded it is unnecessary to determine, since they went merely to form and appellee's right to raise such objection was waived by her failure to make it at the time and in the manner required by paragraph 1716 of the Revised Statutes (Civ. Code) 1913, providing ''that no objection to the form of any question or interrogatory can be made, unless such objection was made before and noted by the officer taking the deposition, if taken upon oral examination, or unless written objections to the form of any written interrogatory be made and filed within five days after the service of the copy of such interrogatory.''

The objection to these answers was properly sustained because it is clear that they were based, at least in part, upon hearsay. The doctor was not told by Pierce himself that he had influenza in the early part of 1924 but heard it out of court from a third person and he could not say positively whether it was the wife or the mother. The rule under such circumstances is stated in Jones on Evidence, paragraph 376 (3d ed.), in this language:

''Although, as we have seen, the opinions of experts may in some cases be based upon personal knowledge gained from their own observation or examination, they cannot give in evidence opinions based upon information gained from the statements of others outside the courtroom, since in such case the opinions would depend upon hearsay. Thus, when a medical witness is examined as an expert, his opinion is inadmissible if based upon the declaration of nurses or other physicians, made out of court, although, on grounds elsewhere discussed, the declarations of the patient may, under proper limitations, form a part of the basis of such opinions.''

It is contended that if the statement was made to Dr. Huckins by the mother it was the admission of a party and therefore not within the hearsay rule, or if made by the wife who at the time was the beneficiary named in the certificate and who testified at the trial that she had a financial interest in the outcome of the case it was still not within this rule. However, it does not appear when it was made, whether before or after the certificate was issued, or whether by the one at the time beneficially interested in the certificate, hence the ruling excluding the answer based upon it was correct.

Assignments 4 and 5 grow out of two instructions, the first having been given at the request of appellee and the second upon the court's own motion. They read:

"I instruct you that you are not bound to accept as infallibly true the opinions of the doctors who have testified, orally or by deposition, as such, in this case, but should only give such testimony the weight to which you believe it entitled when taken in consideration in conjunction with all the other testimony in the case; and, while such expert evidence should be given such weight and force as you believe it merits, you are not bound to and, indeed, should not act upon it alone, to the exclusion of the other credible evidence in the case."

"The Court instructs the jury that, in this case witnesses have been called to testify as medical experts, that is, they have given their opinion based upon hypothetical questions put to them. You will carefully consider this testimony and give it the weight you think it justly entitled to, taking into consideration the amount of skill and learning possessed by such experts; also their candor or want of candor upon the witness stand, or the interest manifested by them, if any, in the result of the suit. While it is proper for you to consider this class of evidence and give it such weight as you may think it justly entitled to, still you are not bound to find the facts to be as they have been testified; but you should consider their

evidence and all other evidence in the case and then give it such weight and credit as you think it entitled to receive. The value of such testimony depends upon the circumstances of each case, and of these circumstances the jury must be the judges. When expert witnesses testify to matters of fact, from personal knowledge, then their testimony as to such facts within their personal knowledge should be considered the same as that of any other witnesses who testify from personal knowledge.''

Several objections to these instructions are urged but we think it necessary to refer to only one and that is the charge that they single out and give undue prominence to the expert testimony of the doctors who testified in the case. It is argued that the expressions, ''you are not bound to accept as infallibly true the opinions of the doctors,'' ''should only give such testimony the weight to which you believe it entitled,'' ''you will carefully consider this testimony and give it the weight you think it justly entitled to,'' and ''while it is proper for you to consider this class of evidence and give it such weight as you may think it justly entitled to, still you are not bound to find the facts to be as they have been testified,'' etc., call the jury's attention specifically to the fact that it was not its duty to give this particular testimony any more weight than it thought it entitled to and, hence, that it was a charge or comment upon the facts constituting a violation of section 12, article 6, of the state Constitution. It is true jurors are the judges of the weight of the evidence and they should appraise all of it in accordance with their judgment as to its weight but a charge which singles out any particular portion of it and tells the jurors several times that they should give this only such weight as they think it entitled to, that they are not bound to accept it as infallibly true nor to find the facts in accordance with it, gives undue prominence to this particular testi-

mony and has a tendency to lead them to weigh it in accordance with what they believe to be the court's judgment as to its weight rather than their own. It is of course proper for the judge to inform the jury that it is the judge of the weight of the evidence and to define what is meant by expert or opinion evidence, but the jury, being the sole judge of the credit that should be given to all of it, whether it be expert or fact testimony, should be permitted to exercise this function without any comment from the court tending in the slightest degree to interfere with its free exercise. In *Hirshfeld* v. *Dana*, 193 Cal. 142, 164, 223 Pac. 451, 460, is found the following statement of the rule and is particularly applicable in this jurisdiction:

"It is clear from what is said on this subject in the latter cases that an instruction to the jury as to the value of or the manner of determining expert testimony is in violation of the constitutional provision as to instructing juries on matters of fact. . . .

"It is no part of the function of the court to either extol or disparage the testimony of experts. It is proper in the instructions to the jury to call attention for instance to the distinction between expert testimony and the evidence of facts, to explain the office of exemplars in handwriting cases, to charge that the opinion of experts is to be considered with the other evidence in the case in determining the facts. But it is never proper to instruct the jury that expert testimony is or is not reliable or as to how the jury should appraise it."

In *Louisville, N. O. & T. Ry. Co.* v. *Whitehead*, 71 Miss. 451, 42 Am. St. Rep. 472, 15 South. 890, the court has this to say regarding the jury's right to weigh expert testimony:

"The evidence of expert witnesses is to be received and treated by the jury precisely as other testimony. Its value may be very great, or it may be of little worth. It may be conclusive, or it may be not even persuasive. Its weight will be determined by the character, the capacity, the skill, the opportunities for

observation, and the state of mind of the experts themselves, as seen and heard and estimated by the jury, and, it should be added, by the nature of the case and all its developed facts.''

See *Spencer* v. *Quincy, O. & K. C. R. Co.,* 317 Mo. 492, 297 S. W. 353; *Indianapolis Traction & Terminal Co.* v. *Taylor,* 55 Ind. App. 309, 103 N. E. 812; *In re Nelson's Estate,* 191 Cal. 280, 216 Pac. 368; *Atchison T. & S. F. R. Co.* v. *Thul,* 32 Kan. 255, 49 Am. Rep. 484, 4 Pac. 352; *Gustafson* v. *Seattle Traction Co.,* 28 Wash. 227, 68 Pac. 721; *People* v. *Harvey,* 286 Ill. 593, 122 N. E. 138; *Rolland* v. *Porterfield,* 183 Cal. 466, 191 Pac. 913; *People* v. *Seaman,* 107 Mich. 348, 61 Am. St. Rep. 326, 65 N. W. 203; *Nelson* v. *Mc-Lellan,* 31 Wash. 208, 96 Am. St. Rep. 902, 60 L. R. A. 793, 71 Pac. 747.

The sixth assignment also raises the correctness of an instruction. The issue in the case, as stated above, was whether Pierce was in good health when he applied for the beneficiary certificate and later accepted it. In his application dated April 23, 1924, he warranted that he was, and in the written acceptance of the certificate signed by him under date of May 14, 1924, he agreed that the certificate should not be in force and effect until he signed it in person during good health. There were provisions of the same purport in the constitution and laws of the association, hence there is no question but that he made his good health both at the time of the application and the acceptance of the certificate, a condition precedent to appellant's liability thereon. *Volunteer State Life Ins. Co.* v. *McGinnis,* 29 Ga. App. 370, 115 S. E. 287; *Logan* v. *New York Life Ins. Co.,* 107 Wash. 253, 181 Pac. 906; *Federal Life Ins. Co.* v. *Wright,* (Tex. Civ. App.) 230 S. W. 795; *Mohr* v. *Prudential Ins. Co. of America,* 32 R. I. 177, 78 Atl. 554; *Anders* v. *Life Ins. Clearing Co.,* 62 Neb. 585, 87 N. W. 331; 37 C. J. 400.

In support of its contention that Pierce was not in good health on either of the dates mentioned appellant introduced in evidence a certified, photostatic copy of the certificate of death of Pierce on file in the office of the Arizona state board of health. It was signed by O. W. Brandon, M. D., as attending physician at the time of death, and Mrs. Joseph Small, Warren, Arizona, as informant. The cause of death was given therein as pulmonary tuberculosis and its duration as four years. Pierce died on June 9, 1926, and the application and certificate having been dated April and May, 1924, respectively, it is apparent that the statement in the death certificate relative to the duration of his illness was important. Without any evidence on this point other than the certificate itself the court at the request of appellee instructed the jury as follows:

"Section 4425, Revised Statutes of Arizona, 1913, Civil Code, provides that a certified copy of any record of birth or death, registered under the provisions of Chapter 11, Title 41, providing for the registration of vital statistics, shall be *prima facie* evidence in all courts and places of the facts stated therein; in this connection the court instructs you that the words *prima facie* evidence means such evidence, as standing alone, unexplained or uncontradicted, is sufficient to establish or maintain the proposition or issue affirmed. It is merely an inference or presumption of law, affirming or negativing a fact, in the absence of direct proof, or until proof can be obtained or produced to overcome the inference, and is the weakest of all evidence upon which a legal action can be sustained, and ceases to be sufficient when rebutted or contradicted by contrary or better proof."

It is contended that the references to *prima facie* evidence as "merely an inference," as "the weakest of all evidence," and as evidence that "ceases to be sufficient when rebutted or contradicted by contrary or better proof," are also comments upon the weight

of such evidence and clearly within the constitutional prohibition of section 12, article 6, *supra*. This, we think, correct, for, though it was the court's duty to define the term, *"prima facie* evidence," this obligation did not carry with it the necessity of including therein matter bringing the instruction directly in conflict with this constitutional provision. The strength or weakness of *prima facie* evidence is not one of its constituent elements, hence, it was for the jury and not the court to determine whether the death certificate was strong or weak as evidence of the duration of Pierce's illness. In discussing an instruction stating that the possession of a note by the maker unexplained is a strong circumstance to show payment the court in *Smith et al.* v. *Gardner,* 36 Neb. 741, 55 N. W. 245, said:

"It is therefore proper, in such a case, to instruct the jury that possession is presumptive or *prima facie* evidence of payment, which will, if uncontradicted or unexplained, warrant a verdict in favor of the party alleging it. But the force of such presumption must always depend upon the circumstances of the case. *Larimore* v. *Wells,* 29 Ohio St. 19. It is error, therefore, to advise the jury that possession of a note by the maker raises a strong presumption of payment, or is a strong circumstance to prove payment."

The judgment is reversed and cause remanded with instruction to grant a new trial.

ROSS, C. J., and LOCKWOOD, J., concur.