[Civil No. 3984. Filed February 6, 1939.]

[86 Pac. (2d) 1026.]

ALFONSO BETANCOURT, and SOCORRO BET-
ANCOURT, a Minor, ENEDINA BETAN-
COURT, a Minor, ARMANDO BETANCOURT,
a Minor, NOEMI BETANCOURT, a Minor,
and ESTHER BETANCOURT, a Minor, by
ALFONSO BETANCOURT, Their Guardian
Ad Litem, Appellants, v. LOGIA SUPREMA DE
LA ALIANZA HISPANO–AMERICANA, a Cor-
poration, Appellee.

Mr. L. J. Cox, for Appellants.

Mr. Greg Garcia, for Appellee.

McALISTER, J.—This is an appeal by the beneficiaries of an insurance policy from a judgment in favor of the insurer rendered by the court notwithstanding a verdict for the plaintiffs.

Juano G. de Betancourt was issued a certificate or policy of insurance for one thousand dollars on February 4, 1936, by the Logia Suprema de la Alianza Hispano-Americana, a fraternal beneficial association, in which her husband and their five minor children were the beneficiaries. She died on March 31, 1936, at the age of thirty-three years and, after proof of death, the company refused to pay the policy upon the ground that she made false representations in her application concerning her physical condition, in that she denied that she was pregnant on January 18, 1936, when she applied for the policy and was examined by a physician, and again on February 4 when it was delivered to her.

According to the policy, her application which includes her medical examination became a part of the contract of insurance, and in her application there appears in English on page 2 immediately following her answers to questions pertaining to her personal and family histories, and just above her signature, a paragraph containing these statements:

"Applicants Will Please Note
This Clause
"I have verified each of these answers and statements and I adopt as my own, whether written by me or not, and declare and warrant that they are full, complete and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract. I hereby name and make the officers of the Alianza Hispano-Americana who have aided me in making this application, my agents for such purpose. I waive for myself and my beneficiaries all claims of benefit under this application until it shall be approved by the Supreme Physician and I shall be regularly initiated in accordance with the ritual of this Society and shall make the payments as required by its laws at my initiation; and until certificate, which shall be issued to me in pursuance of this application, shall be delivered to me after initiation while in sound health (and if a woman, not pregnant) and in pursuance of the General Laws of the Society."

On the third page of the application are thirteen questions under the heading, "To Be Answered by All Female Applicants," and those that are pertinent together with their answers are as follows:

"2.—Is your menstruation regular and healthy? Yes.

"3.—When the last one? December 28, 1935.

"4.—Have you passed the menopause? No.

. . . . . . . . . . . . .

"7.—How many children have you had? 5 living, 2 dead.

. . . . . . . . . . . .

"10.—Are you pregnant now? No."

Immediately following these questions and answers appears this statement:

"Important: If applicant is pregnant, application will not be accepted by supreme physician. Examination should be postponed until at least two months after confinement."

Following this is the special report of the medical examiner who certified that the answers to all the questions on that page are in his handwriting, the deceased's signature not appearing thereon.

It is admitted by both sides that the insured was pregnant when the policy was issued, and the death certificate discloses that one of the contributing causes of her death on March 31, 1936, from "Influenza Pneumonia" was "Pulmonary Hemorrhage" on March 31 and "Pregnancy with Miscarriage" on March 30, 1936, which, according to the death certificate of the infant, occurred at six months' gestation.

At the close of the evidence the defendant moved for a directed verdict in its favor, but the motion was not granted at that time because the plaintiffs' attorney stipulated in open court as follows:

"The Court: Let the record show, L. J. Cox, attorney for the plaintiff, in open court stipulates that in the event that the court overrules the motion for a directed verdict for the defendant, after the case is submitted to the jury and a verdict is returned, the defendant may make a motion for judgment notwithstanding the verdict and that the court may in that event pass upon such motion and give judgment just as though he had in fact directed a verdict, should the court determine that the defendant should have a directed verdict in favor of the defendant. It is further stipulated should the court determine that the case should have been submitted to the jury as an equity case that the Court may consider the case as an equity case, and that the court may consider the verdict as advisory."

The case was then submitted to the jury, which returned a verdict in the sum of one thousand dollars for the plaintiffs, who moved for judgment thereon. The defendant at the same time asked for judgment *non obstante veredicto* and the court granted this request. It is the judgment thus rendered that the plaintiffs have brought here for review.

One of the principal propositions upon which appellants rely is that in the absence of a statute permitting it the court has no power to render judgment notwithstanding the verdict merely because it feels that the verdict has no support in the evidence and to uphold this view they cite several decisions of this court, the first of which is *Bryan* v. *Inspiration Consolidated Copper Co.,* 23 Ariz. 541, 557, 205 Pac. 904, 909. In that opinion the statement was made that

"in the absence of a statute permitting it, a court may not render judgment notwithstanding the verdict merely because it deems the verdict unsupported by the evidence"

and each time the question has since arisen this rule has been followed. The proposition was reaffirmed in *Welch* v. *United Mutual Benefit Association,* 44 Ariz. 198, 36 Pac. (2d) 256, and this decision was cited in *Durham* v. *Firestone Tire & Rubber Co.,* 47 Ariz. 280, 291, 55 Pac. (2d) 648, 653, as authority for the statement:

"Nor in this state may the trial judge render judgment *non obstante veredicto.*"

■■ It appears from the record that the court entertained the view at the close of the evidence that appellee's motion for an instructed verdict should be granted but it did not then, due to the stipulation entered into by appellants' counsel, make the order; it let the case go to the jury instead with the understanding that if a verdict for appellants should be returned,

156

appellee might move for judgment notwithstanding the verdict and, provided it should be of the view at that time that appellee was entitled to a directed verdict, it might then pass upon that motion and render judgment as though it had in fact directed a verdict. The purport of this stipulation is that in case submission resulted in a verdict for appellants, the court, through the instrumentality of a motion for judgment *non obstante veredicto,* might give. appellee the same relief it would have gained from a verdict directed in its favor before submission; in other words, the understanding was that granting appellee's motion for judgment notwithstanding the verdict should have the same effect as sustaining its motion for a directed verdict would have had. There may be some question whether the parties could legally enter into such an agreement, yet it dealt with a matter of procedure only and should, therefore, be given the effect they intended it to have, and the only way this can be done is to treat the judgment as though it had been rendered upon a verdict directed by the court. So the controlling question in the case is whether the court was justified in granting appellee's motion for a directed verdict. In determining this, the elementary principle that if the appellants would have been entitled to a verdict upon any theory of the case presented by the pleadings and evidence it was error to direct a verdict, must be kept in mind.

 It is not disputed that the policy or certificate of insurance was delivered to the insured on February 4, 1936, and that all the premiums due thereon had been paid up to the date of her death on March 31, 1936, but notwithstanding this, appellee contends that it is not liable on the policy because the insured falsely represented to the company in her application for insurance and again when she accepted the policy that she was not pregnant, when it is admitted that the

contrary was true and had been for about four months. Appellants contend, upon the other hand, that the deceased made no false representations to Dr. Snyder concerning her physical condition but that he knew from his examination of her that she was pregnant and, notwithstanding this knowledge, wrote "No" in answer to the question, "Are you pregnant now"? without interrogating her at all about it; that while the policy or certificate was issued upon the theory that this answer was true, yet it was incorporated by the agent of the company, the doctor, who knew it was false, without any knowledge on the part of the insured that information on that question was wanted or material and, this being true, the insurer is estopped from asserting its falsity. To substantiate their respective positions the parties call attention to the testimony of Dr. Snyder, the examining physician, and that of Alfonso Betancourt, the only two of those present when she was examined physically who testified at the trial. Appellee relies upon the statement of the former that the answer to each of the questions under the heading, "To Be Answered by All Female Applicants" was written by him as the deceased gave it to him through the interpreter and that his examination of her did not disclose she was pregnant, while appellants' contention rests on the testimony of the latter that the doctor asked the deceased nothing whatever about being pregnant and that no one read to her in Spanish the certificate on the second page of the application in which she waived all claims of benefit thereunder until the certificate issued to her pursuant thereto should be delivered to her while in good health and not pregnant. It is unnecessary to state in detail what each of them said, because it is clear from the quoted excerpts from the application signed by the deceased that appellee association does not insure

women who are pregnant, that is, that it is a condition precedent to the issuance of a policy by it to a woman that she be not pregnant, so in this instance the policy having been issued to a woman in that condition is void and unenforceable. She is in the same position as a person suffering from some serious disease who is issued a policy in a company requiring that one be in good health to be insured, hence the holding in the recent case of *Sovereign Camp, W. O. W.,* v. *Daniel,* 48 Ariz. 479, 484, 62 Pac. (2d) 1144, 1146, that a policy issued under such circumstances is void from the beginning is applicable. The following language was used:

"It will be seen from the foregoing statement of facts that the application, insurance certificate, and the constitution and by-laws of the defendant all required, as a condition precedent to the assumption of any liability on the insurance certificate issued to deceased, that he should be in good health at the time it was issued and delivered to him, and that he certified not only that he was in good health at the time of his application on February 15th, but at the time of the delivery of the certificate on March 1st. Since his warranty was a condition precedent to the taking effect of the policy, if, at the time of its delivery he were not in good health, the minds of the parties did not meet, the contract was never completed, and the policy was void *ab initio. Security Benefit Assn.* v. *Small,* 34 Ariz. 458, 272 Pac. 647, 649; *Supreme Lodge, etc.,* v. *Grijalva,* 28 Ariz. 77, 235 Pac. 397; *Sovereign Camp, etc.,* v. *De Ortega,* 37 Ariz. 185, 291 Pac. 996; *Logia Supreme, etc.,* v. *De Alonzo,* 28 Ariz. 230, 236 Pac. 708. . . . ''

A statement in effect the same as this was made in the first of the cases cited as authority, *Security Benefit Assn.* v. *Small,* but in both of them the main question was whether the insured was in fact in good health when he made the application, the contention in the Small case being that he was suffering from tubercu-

losis and that in the Daniel case that he had nephritis and pernicious anemia. It was not seriously questioned in either, however, that the policy was unenforceable if this claim were true, hence the very thing it was sought to establish in those cases as a defense to the policy is admitted by both parties to be true here, namely, that the deceased was (not ill but) pregnant when she made the application and later accepted the policy, and the evidence discloses that this condition resulted in a miscarriage which was a contributing cause of her death. And there can be no question but that under its rules, the application and the policy itself pregnancy prevents the association from issuing a policy the same as tuberculosis or pernicious anemia would and, this being true, the minds of the parties never met and there could have been no completed agreement.

██ Appellants insist, however, that even though this be true and the policy is void and unenforceable, appellee is estopped from asserting that falsity because its agent, the doctor, filled in the negative answer after the deceased replied that she was pregnant and that she did not know he had done so. Whether this be true, or whether the doctor recorded the answer the way she gave it to him, as he testified he did, is immaterial, for two reasons. The first is that he had no authority to waive the condition precedent to the insured's right to obtain the policy, namely, the requirement that she be not pregnant. The policy itself contains this provision:

"1. The Supreme Lodge of the Alianza Hispano-Americana is incorporated in accordance with the Laws of the State of Arizona, and the same being a Fraternal Benefit Society, no subordinate body thereof nor any of its subordinate officers, or members, or their beneficiaries, shall have the power to waive any of the provisions of the General Laws and Regulations

of the Society, and the same shall be binding on the Society and each and every member thereof and all beneficiaries of members.''

If the authority to make such a waiver rested in anyone, it was in the proper officers of the supreme lodge, and before it could be successfully contended that they had done so, it would be necessary to show that they acted with knowledge of the facts. A specific agreement to waive would not be required, however; acceptance of dues from an insured after knowledge of her condition would estop the insurer from asserting it as a defense.

The second reason is that the society's policy of not insuring pregnant women appears in the application signed by the deceased and it was her duty to know this. That portion of the application was, it is true, printed in English but when she went to the doctor's office for her medical examination she took with her an interpreter, who could read and speak both English and Spanish and she could have had this person read to her in Spanish the entire application. If she had done so, she would have known that the answer to the question regarding her pregnancy at that time had been incorrectly recorded. Under these facts the following statement in *Sovereign Camp, W. O. W.,* v. *Daniel, supra,* is applicable and controlling:

''It is urged by plaintiff that, even admitting the deceased was not in good health at the time he made the warranties in question, he made these without his knowledge and through the fraudulent conduct of the agent of the defendant, and that therefore he is not bound thereby. . . . It is generally held that, when a person is unable to read a document which he signs, it is his duty to have the same read to him, if there is a person available who can read it, and that, if he neglects to have this done, he may not thereafter be heard to say that he did not assent to its provisions.''

During the trial appellee deposited in court for the benefit of appellants the premiums paid on the policy, $3.80, and by so doing discharged its obligation thereon.

The order directing a verdict for appellee was correct and is hereby affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.