[Civil No. 4065.   Filed February 19, 1940.]

[99 Pac. (2d) 101.]

EARL T. HAZELETT, Appellant, v. STATE OF
ARIZONA, Appellee.

Messrs. Silverthorne & Silverthorne, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Appellee.

LOCKWOOD, J.—A complaint was filed under the provisions of section 275, Revised Code of 1928, alleging that Earl T. Hazelett, hereinafter called defendant, was the father of a child of which Mary Louella Hanrahan, an unmarried woman, hereinafter called plaintiff, was then pregnant. The case proceeded in the usual manner to be heard before a jury which returned a verdict finding the defendant guilty as charged. After various proceedings, the entire case was brought before us for review.

There are numerous assignments of error, which we shall consider in the order which seems most advisable. The first is that the complaint did not state a cause of action. This is grounded upon the

contention that section 275, *supra,* is applicable only to children conceived before the passage of sections 273 and 274, Revised Code of 1928, and, therefore, the complaint shows on its face the child involved was conceived after that date. Chapter 9 of the Revised Code, of 1928, is entitled "Bastards" and contains thirteen sections, numbered 273 to 285, inclusive. Upon a careful examination of the chapter, it appears that it sets up two separate and distinct causes of action arising when a child is born out of lawful wedlock. Section 274, *supra,* provides for the establishment by the mother of the paternity of such child. The only pur-. pose and only result of the action is to establish legally who the father of the child is. It grants no maintenance for either the child or the mother, nor is there any penalty assessed against the father. Sec. 273, *supra,* declares the only result of a successful action under section 274, *supra.* It states that every child is the legitimate child of its natural parents, and as such has certain rights of support, education and inheritance, but it does not provide any method for the enforcement of these rights. They apparently are to be enforced in the same manner as similar rights pertaining to a child born in wedlock. This action is expressly declared cumulative to the remedies provided in the remaining sections of chapter 9, *supra.* It first came into our law in chapter 114, session laws of 1921, which declared the action to be cumulative as to the remedies contained in paragraphs 369–381, Penal Code of Arizona, 1913. Sec. 3. Upon referring to the provisions of the Penal Code just cited, we find that they are in substance the same as sections 275 to 285, *supra,* inclusive. It is unnecessary for us to set forth all of these various session laws and sections, but upon a comparison thereof it is very plain that it was the intent of the legislature to give to an unmarried

mother of a child, expectant or existing, two separate and distinct rights of action, either one of which might be brought as the situation required.

We have held in the case of *In re Silva,* 32 Ariz. 573, 261 Pac. 40, that the action set forth in section 274, *supra,* applied only to children born after the law of 1921 went into effect, but we said nothing whatever therein as to the right of action under section 275, *supra.* It is apparently the contention of defendant that since section 273, *supra,* declares that "Every child is the legitimate child of its natural parents," that a statute which originally called the child of a woman, which was born out of wedlock, a "bastard" cannot apply to a child born after the passage of section 273, *supra.* Both the child described in section 273, and the one described in section 275, are obviously born out of lawful wedlock. Section 273 does not attempt to, and, indeed, could not change the fact that a child is not born in lawful wedlock, but it can and did give certain rights to such a child. We see nothing inconsistent in the two causes of action, and the court properly overruled the demurrer to the complaint.

The next question is whether the court erred in refusing three instructions asked by defendant. These instructions read as follows:

"You are instructed that the defendant is presumed to be innocent until that presumption is overcome by a preponderance of credible evidence."

"You are instructed that if you believe from the evidence in this case that the charge against the defendant rests alone on the testimony of the prosecuting witness, Luella Hanrahan, you should scrutinize her testimony with care and caution."

"You are instructed that under the evidence in this case you are not to consider any acts of sexual intercourse that may have taken place between the complainant and the defendant at Santa Monica, California, in determining whether or not the defendant is

the father of the child, if you believe that there were such acts of intercourse, but must confine your consideration to the alleged act of sexual intercourse which took place on July 3, 1937, in the room of the defendant at the Mayflower Hotel in Los Angeles, California, and unless you believe from the evidence that an act of sexual intercourse did take place between the plaintiff and the defendant at that time and place, your verdict must be for the defendant.''

■ The first instruction accurately states the law, but it was given in substance by the court of its own motion.

■ The second instruction in effect singles out the testimony of one witness, and warns the jury to scrutinize her testimony with particular care. The court, in its general instructions, did inform the jury that it might, in determining the credibility of the witnesses, consider their interest or motives in the case, and we think this went as far, under our practice, as a trial judge is authorized to go in discussing the credibility of a witness. *Security Benefit Assn.* v. *Small,* 34 Ariz. 458, 272 Pac. 647.

■ The third instruction in effect tells the jury that the whole case stands or falls upon whether defendant and the complaining witness had sexual intercourse on one certain date at one certain place. The complaint does not set up any particular date or act of intercourse which caused the conception of the child involved, and the gist of the action is not unlawful sexual intercourse, but the conception of a child. This being the case, we think that it is immaterial as to what particular act of intercourse between defendant and the complaining witness caused the conception.

■ The next objection is that the court erred in rendering judgment for the expenses attendant upon the birth of the child for the reasons (a) such expenses are only to be allowed when the county has incurred

them or become obligated therefor, and there is no evidence in the record to that effect, and (b) that the court did not have jurisdiction to grant additional relief after the entry of the order for judgment made on July 2, 1938. The contention that judgment for expenses incidental to the birth of the child can only be allowed when the county has paid or become liable for such expense, is correct. The statute apparently does not contemplate that such expenses may be recovered from the father in case the mother pays or assumes them of her own volition. Why the legislature so provided, we cannot say. The question then is whether there was evidence to sustain a judgment against defendant for such expenses.

█ Upon an examination of the statute, we think it is apparent that the only issue to be submitted to a jury is whether defendant is the father of the child, and the only verdict which it may return is guilty or not guilty. Provisions in regard to the payment of expenses of the birth are ancillary and dependent upon the determination of the principal issue, and obviously a matter to be settled by the court after the verdict of guilty or not guilty has been reached.

█ The minutes show that on July 19th, the state and defendant both being represented, counsel for the state presented certain bills and the entire matter was argued to the court. It does not appear affirmatively from the record just what these bills were, or what evidence was presented in support of them, but we think, in view of the usual presumption of regularity of the action of a court of record, we should assume the evidence was sufficient to justify the conclusion that someone had either paid, or was obligated to pay, bills to the amount found in the judgment, but it does not show who that someone was. If the judgment in this particular had run in favor of the county

and against defendant, we might presume that the evidence showed it was the county that had paid or assumed the obligation, but since it is in favor of the plaintiff, that presumption cannot be made. It is necessary, therefore, that the judgment be reversed and the case remanded with instructions to determine whether the county has paid, or was obligated to pay, any of the expenses of lying-in, and if so, to include in the judgment a direction that this be paid to it. If, on the other hand, the expenses were paid, or assumed, by any other person, no judgment for the expense of lying-in can be rendered.

In view of what we have said it is immaterial whether rule 7 was complied with in the final rendition of judgment, and we assume that after determination of the issue above indicated, judgment will be properly rendered.

ROSS, C. J., and McALISTER, J., concur.