[No. 15008. *En Banc.* May 31, 1919.]

NELLIE M. (Known as Daisy) LOGAN, *Respondent,* v. NEW YORK LIFE INSURANCE COMPANY, *Appellant.*[1]

INSURANCE (34) — LIFE POLICY — VALIDITY — DELIVERY WHILE IN GOOD HEALTH. Where insured died nine days after delivery of a policy, which from the undisputed testimony of experts was from a disease (tumor of the brain) which had existed for months and from which he was ailing at the time of delivery, it conclusively appears that the policy was not delivered to the insured in his lifetime in good health, as required by the policy in order that it take effect.

SAME (34) — DELIVERY WHILE IN GOOD HEALTH — WARRANTIES. A policy providing it shall not take effect unless delivered to the insured in his lifetime in good health is not governed by Rem. Code, §§ 6059-34 and 6059-184, relating to the effect of oral or written misrepresentations or warranties or statements made in the negotiations or by the insured; since the condition is not a warranty or statement within these statutes.

SAME (34, 176)—DELIVERY WHILE IN GOOD HEALTH—BURDEN OF PROOF. When the policy has been delivered and the first premium paid, the burden of proof is upon the insurance company to show that the policy was delivered while the insured was not in good health, and for that reason did not become effective.

PARKER, HOLCOMB, FULLERTON, and TOLMAN, JJ., dissent.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered June 22, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon a life insurance policy. Reversed.

[1]Reported in 181 Pac. 906.

*Lee & Kimball* and *Bridges & Bruener,* for appellant.

*A. Emerson Cross* and *John C. Hogan,* for respondent.

MOUNT, J.—This action was brought upon a policy of life insurance issued by the defendant upon the life of Allen Mitchel Logan. The plaintiff was named as the beneficiary therein. The complaint alleged, in substance, that the policy was delivered to the insured on July 28, 1916; that the first premium was paid; that the insured died on August 6, 1916; that proofs of death were furnished in accordance with the terms of the policy, and that the defendant refused to pay. The answer of the defendant admitted the issuance and delivery of the policy and that the premium was paid; that the insured died as alleged; but denied any liability by reason of the alleged fact that the insured was not in good health at the time the policy was delivered, and that the policy was obtained upon false and fraudulent representations. Upon these issues the case was tried to the court and a jury. A verdict was returned in favor of the plaintiff for the full amount of the policy. At the close of the evidence, the defendant moved for a directed verdict, which motion was denied. After verdict the defendant moved for judgment notwithstanding the verdict, which motion was also denied, and judgment was entered in favor of the plaintiff for $5,000, the amount of the policy. The defendant has appealed from that judgment.

Upon the trial of the case it appeared, without dispute, that the insured, during his lifetime, on the 27th day of June, 1916, made an application for the policy sued upon. This application contained the following clause:

"I agree as follows: 1. That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health, and that unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application; . . ."

It was stated in the application that the insured desired the policy to date from July 25, 1916. Thereafter, the insured was examined by a physician, the report of the physician was sent to the insurance company and the policy was issued. It was delivered to the insured on the 28th day of July, 1916, and the first premium was paid at that time. The insured died suddenly, from a tumor of the brain, on August 6, 1916, nine days after the delivery of the policy. It is shown, without dispute, that, after the application was made for the policy, but before the policy was delivered, the insured had several spells of illness, one on June 22d, another on July 3d, and another on July 17th; that, upon these occasions, he suffered from severe headache, nausea, chills and poor heart action; and that, nine days after the policy was delivered, he had another of these spells, from which he died. Upon a *post-mortem* examination it was found that he died from a tumor of the hypophysis. Upon the trial of the case, four doctors qualified as experts and testified, in substance, that this disease was of slow growth, running over months or years, and that symptoms of the disease were such as the insured had manifested prior to the delivery of the policy in question. There was no evidence in the record that this disease which resulted in the death of the insured could have originated within the period between the date the policy was delivered and the date of the insured's death. All

the evidence is to the effect that the disease could not have originated within that time.

Upon this state of facts, we are satisfied that it was the duty of the court to have directed a judgment of dismissal at the close of the evidence. The rule is stated in 14 R. C. L., page 900, at § 78, as follows:

"Where a completed contract of life insurance exists it is immaterial that the insured was not in good health at the time of the delivery of the policy evidencing the contract. However, applications for policies of life insurance, as well as policies, frequently provide that the policy shall not take effect unless it is delivered to the insured and the first premium paid while he is in good health, and such a provision is valid and enforceable, and it is immaterial that the condition of the insured has not changed since his application was made; or that the insured was ignorant of his condition."

The text is well supported by foot notes.

*Murphy v. Metropolitan Life Ins. Co.,* 106 Minn. 112, 118 N. W. 355, was a case where a policy was issued on May 7, 1906. On April 23d, a physician had examined the insured and found a swelling of the knee. He treated the insured up to June 7th, when the knee was placed in a cast. In August the knee was operated upon for malignant tumor, from which the insured died. The policy contained a clause like the one in question. The court there said:

"It is clear from the language of the policy that the defendant's promise of insurance was not absolute, but conditional, and that the existence of life and sound health in the insured on the date of the policy is the condition upon which the promise is made. It is the fact of the sound health of the insured which determines the liability of the defendant, not his apparent health, or his or any one's opinion or belief that he was in sound health. Therefore, if the insured was not in fact in sound health on the date of the policy, the

defendant is not liable unless it has .waived the defense. . . . The term 'sound health,' as it is used in this policy, does not mean perfect health, but an absence of any disease that has a direct tendency to shorten life."

In *Paine v. Pacific Mut. Life Ins. Co.*, 51 Fed. 689, the court said:

"Conceding that the application was accepted on June 7, 1890, by the defendant, it expressly provided that the contract of insurance should take effect and be in force only upon compliance with three conditions precedent, viz, that a policy should be delivered, that it should be delivered during the life and good health of the applicant, and that the premium should be paid when the policy was delivered. These conditions were never complied with. The vital, indispensable condition was that the policy should be delivered and take effect during the life and good health of the applicant; but that life had ended, that applicant was no more, and that condition could never be complied with, and therefore the contract could never take effect."

In *Metropolitan Life Ins. Co. v. Howle*, 62 Ohio St. 204, 56 N. E. 908, the court said:

"The condition in the policy is that there shall be no obligation assumed by the company, unless upon the date of the policy the insured, the wife, shall be alive and in sound health. The matter of life and sound health is not made to depend upon her knowledge thereof, but upon the fact itself. She might be dead and not be conscious of it, and she might be in unsound health and not know it, but either would alike defeat a recovery."

In *Gallant v. Metropolitan Life Ins. Co.*, 167 Mass. 79, 44 N. E. 1073, the court said:

"The company made its own contract, a part of which was that no obligation was assumed by the company unless, at the time when the policy was issued the insured was 'alive and in sound health.' If, in

fact, the insured at that time was not in sound health, the defendant is not liable on the policy, and this fact can be shown by any competent evidence.''

In *Metropolitan Life Ins. Co. v. Willis,* 37 Ind. App. 48, 76 N. E. 560, the court said:

''The policy recites that it is issued upon the written application of the insured, and that no obligation is assumed, unless, on the date the policy is delivered, 'the insured is alive and in sound health.' The evidence shows conclusively that he was not in 'sound health' when the policy was delivered. It is unnecessary to cite authorities in support of the proposition that an insurance company has the right to make such conditions a part of its contract of insurance. These undisputed facts establish such a breach of the contract as to relieve appellant of liability.''

In *Yount v. Prudential Life Ins. Co.* (Mo. App.), 179 S. W. 749, the court said:

''No contract could come into existence until his proposal had been accepted upon the terms required, and notice of such acceptance conveyed to him. . . . Clearly a delivery of the policy to the applicant during his lifetime and while he was in good health was required before the things done by the parties could ripen into a contract. It was a condition precedent to a completion of the contract.''

And in *Gallop v. Royal Neighbors of America,* 167 Mo. App. 85, 150 S. W. 1118, the court said:

''Parties to a contract of insurance have the undoubted right to agree on the terms of their contract and to declare when and under what conditions the contract shall go into effect. . . . And where the parties agree in the application that the contract of indemnity shall not take effect until the delivery of the policy at a certain time and under certain specified conditions, such agreement will be enforced if it is one the parties lawfully could make. . . . The physical state the contract was intended to have existent at the time it became effective as a contract of indemnity was

in the nature of a condition precedent. . . . And since that condition had failed before the delivery of the certificate, it must follow that the contract at no time came into being.''

Numerous other cases to the same effect might be cited. The parties to this contract agreed that it should not take effect unless the first premium was paid and the policy delivered to, and received by, the insured in his lifetime and good health. It is proven conclusively that, at the time the policy was delivered, the insured was not in good health. He died nine days afterwards from a disease which the evidence shows had existed for months, or probably years, before the delivery of the policy. It is true the applicant was unconscious of the fact that he was ailing from that disease; and for that reason, no doubt, he agreed that the policy should not take effect until it was delivered to him in his lifetime and good health.

The jury in this case, upon special interrogatory submitted to them, answered that the insured was in good health at the time the policy was delivered. But there is no evidence in the record to support this finding. In fact, the entire evidence is to the effect that the insured was ailing before the policy was delivered; that the symptoms which he had before the policy was delivered were the symptoms of tumor of the brain. While the physicians who attended him upon these different occasions were unable to diagnose the case as tumor of the brain, it was discovered upon his death that this was the cause of his death. There was no evidence, and none can reasonably be anticipated, that the disease from which the insured died was one which was, or might have been, contracted after the delivery of the policy. Since there was no evidence at all to support the finding of the jury, it follows that the finding is of no force. This was the vital question in the

case, and when the evidence altogether showed that the insured was not in good health at the time the policy was delivered to him, the policy did not take effect according to the contract and according to the great weight of authority, a part of which we have hereinbefore cited.

The respondent contends that this policy is governed by the provisions of the following sections of Rem. Code:

"§ 6059-34. No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive. If any breach of a warranty or condition in any contract or policy of insurance shall occur prior to a loss under such policy, such breach shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of such loss under such contract or policy."

"§ 6059-184. No life insurance policy . . . shall be issued or delivered . . . unless it contains . . .

"(3) A provision that the policy and the application therefor shall constitute the entire contract between the parties and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

These provisions of the code apply to representations by the insured as inducements or upon his qualifications in his examination for the insurance, and we have so held in a number of cases. See: *Hoeland v. Western Union Life Ins. Co.*, 58 Wash. 100, 107 Pac. 866; *Woods v. Insurance Co. of Pennsylvania*, 82 Wash. 563, 144 Pac. 650; *Quinn v. Mutual Life Ins. Co.*, 91 Wash. 543, 158 Pac. 82; *Brigham v. Mutual Life Ins. Co.*, 95 Wash. 196, 163 Pac. 380; *Goertz v. Continental Life Ins. & Inv. Co.*, 95 Wash. 358, 163

Pac. 938; *Ramat v. California Ins. Co.*, 95 Wash. 571, 164 Pac. 219; *Askey v. New York Life Ins. Co.*, 102 Wash. 27, 172 Pac. 887, L. R. A. 1918 F 267.

In all these cases we had under consideration representations and statements made in order to obtain the insurance. The condition that the policy shall not take effect unless it is delivered and received by the insured in his lifetime and good health is not a warranty or statement within the meaning of the statute. Respondent apparently concedes that, if the insurance company, before delivery of the policy, had discovered the fact that the insured was in bad health, the company might then have refused to deliver the policy. Respondent also apparently concedes that, if the insured had refused to pay the premium upon the policy when it was offered for delivery, then the company might have refused to deliver the policy and the contract would not take effect. There were three conditions here which were made precedent to the contract becoming effective: first, the payment of the premium; second, the delivery of the policy; and third, the delivery during the lifetime and good health of the insured. All these conditions must concur before the contract of insurance became effective. If the payment of the premium is a condition precedent, the delivery of the policy during good health is likewise a condition precedent. It is idle to say that, where two or three conditions are named in the same clause in exactly the same way, one of them is a condition precedent and the others not.

While there are authorities to the effect that the burden is upon the respondent to prove that the policy was delivered while the insured was in good health, we think the better rule is that, when the policy has been delivered and the first premium paid, the burden of proof is upon the insurance company to show

that the policy was delivered while the insured was not in good health and, for that reason, the contract did not become effective. In this case the appellant maintained that burden, because it was clearly shown, without any dispute, that the insured died nine days after the policy was delivered; that the insured was suffering from symptoms which indicated a tumor of the brain prior to the delivery of the policy; and that a disease of this kind does not appear except through months or years of growth. So there can be no escape from the conclusion that the evidence shows beyond doubt that the insured was suffering from a tumor of the brain at the time the policy was delivered to him and that he died therefrom. There is no escape from the conclusion that the policy never took effect by reason of the agreement between the insured and the insurance company that it should not take effect unless delivered to the insured in his lifetime and good health.

We conclude, therefore, that the contract for life insurance was not completed and the policy never became effective. It is unnecessary to consider other questions presented.

The judgment appealed from is therefore reversed, and the cause ordered dismissed.

CHADWICK, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.

PARKER, J. (dissenting)—I cannot see my way clear to concur in the reversal of the judgment of the trial court. I see nothing involved in this case other than the question of fact as to whether the deceased was in good health at the time of the delivery of the policy, as to which question the burden of proof, as conceded in the majority opinion, rested upon the insurance company. The deciding of this case upon the merits

by the court in favor of the insurance company is not deciding that there was no evidence to support the finding of the jury that the deceased was in good health at the time the policy was delivered; *but it is deciding, as a matter of law, that it has been affirmatively conclusively proven that he was not then in good health.* To my mind, the two or three sick spells of the deceased, occurring a short time before the delivery of the policy, and the uncontroverted testimony of the expert witnesses that, in their opinion, the deceased was not in good health at the time of the delivery of the policy, is not conclusive upon that *question of fact,* in the sense that the court is, upon such a showing, authorized to decide it in favor of the insurance company as a matter of law, contrary to the jury's finding. The jury may have believed that the deceased was in good health at the time of the delivery of the policy, notwithstanding a short time prior thereto he had two or three sick spells. The jury may have also believed that the testimony of the expert opinion witnesses was not such as to compel a finding that the deceased was not in good health at the time of the delivery of the policy. It is to be remembered that this was the testimony of human witnesses, the weight and credibility of which the jury were the judges. The mere fact that there were no expert witnesses testifying that, in their opinion, the deceased was in good health when the policy was delivered, does not take away from the jury the right and duty of weighing the testimony and being the judges of the credibility of these expert opinion witnesses. It may be that the trial court should have awarded the insurance company a new trial upon the ground that the verdict was against the weight of the evidence, and possibly the record would warrant this court in deciding that the trial court abused its discretion in

denying the motion for new trial made upon that ground. But that is quite a different matter from finally deciding the case upon the merits by this court. I think the judgment of the trial court should be affirmed; or, in any event, no disposition of the cause should be made by this court more favorable to the insurance company than to grant it a new trial.

HOLCOMB, FULLERTON, and TOLMAN, JJ., concur with PARKER, J.