[No. 28426. Department Two. January 4, 1943.]

LAURA M. DOERNBECHER, *Appellant,* v. MUTUAL LIFE
INSURANCE COMPANY OF NEW YORK, *Respondent.*[1]

[1]Reported in 132 P. (2d) 751.

*Little, Burgunder & Smith,* for appellant.

*Evans, McLaren & Lane (Louis W. Dawson,* of counsel), for respondent.

BEALS, J.—August 15, 1935, Edward M. Doernbecher applied to Mutual Life Insurance Company of New York for two policies of insurance upon his life, each in the amount of six thousand dollars. The same day, Mr. Doernbecher was examined by the company's physician, and, August 20th following, the policies were issued, having been delivered to the insured August 27th. The insured had other policies of life insurance with the company referred to, and they were consequently well acquainted with him. There is little dispute as to the facts.

August 22nd, Mr. Doernbecher had occasion to consult his physician, Dr. J. F. Battle, who suggested that his patient have a thorough checkup of his intestinal tract. Following this advice, examinations were made August 26th, 27th, and 28th. X rays which were taken proving unsatisfactory, another X-ray examination was made August 30th, which showed the existence of a growth in the vicinity of the colon. The X rays not disclosing whether the growth was benign or malignant, September 14th, Mr. Doernbecher was hospitalized, an operation disclosing the fact that he was suffering from carcinoma of the sigmoid colon. The cancerous condition having reached such an advanced stage that it could not be removed, a colotomy was performed.

Mrs. Doernbecher was advised that her husband was suffering from cancer, but he was told that a tumor had been removed, and that the colotomy was only temporary. Dr. Battle testified that in his opinion his patient never learned that he was suffering from can-

cer, and the doctor advised the members of the family not to inform Mr. Doernbecher of his condition, as the shock resulting from such information would cause great worry to the patient and possibly result in shortening his life. The doctor also testified that the condition disclosed by the operation could not have developed since August 27th, but had existed for some time prior to the month of August. He also stated that there had been no change in Mr. Doernbecher's condition since August 15th, or since August 27th, the date of delivery of the policies.

Mr. Doernbecher was aided by the operation, and resumed the care of his business. During the month of February, 1936, he, with his wife, visited the city of New York and while there the insurance company delivered to him and Mrs. Doernbecher a written notice of cancellation of the two insurance policies. The notice advised the insured that in accepting the policies he. had agreed that the policies would not "take effect unless and until delivered to and received by the insured . . . during the insured's continuance in good health." The notice further stated:

"The company has evidence satisfying it that you were not in good health when the premiums on these policies were paid and the policies delivered. The contracts therefore never took effect."

Demand was made for the return of the policies.

It happened that Mr. Doernbecher's personal attorney, John C. Kendall, Esquire, of Portland, Oregon, was in New York with Mr. Doernbecher, and, upon his attorney's advice, further consideration of the matter was postponed until the Doernbechers should return home.

During the following month, a representative of the insurance company, referred to in the testimony as Mr. Swinney, called on Mr. Doernbecher, and was by

him referred to Mr. Kendall. At or about this time, Mr. Swinney and one of the company's counsel called upon Dr. Battle, who impressed upon them the advisability of keeping Mr. Doernbecher in ignorance of the fact that he was suffering from cancer. Sometime in April following, Mr. Swinney called upon Mr. Kendall, telling him that Mr. Doernbecher had been operated on for cancer, and that the insurance company had decided to insist upon the cancellation of the policies. A short time thereafter, Dr. Battle informed Mr. Kendall concerning Mr. Doernbecher's condition, again advising that the sufferer should be kept in ignorance of the nature of his trouble. Mr. Kendall stated it to have always been his considered opinion that the company would not prevail in an action to cancel the policies, and that he consistently advised Mr. Doernbecher not to surrender the same, until he, Kendall, changed his advice to his client, in view of Dr. Battle's opinion that Mr. Doernbecher should not be permitted to obtain knowledge of the fact that he was suffering from cancer.

June 10th following, Mr. Swinney and one of the insurance company's counsel called on Mrs. Doernbecher, who was the beneficiary named in the policies, leaving with her a letter addressed to her, but containing the language of the notice which had been served in New York. On this occasion, Mrs. Doernbecher was advised that, unless her husband consented to return the canceled policies, the company would institute suit to enforce such cancellation. Of course, Mrs. Doernbecher knew that such action would undoubtedly result in Mr. Doernbecher's becoming advised of the nature of his affliction, with the possible bad results anticipated in such event by Dr. Battle. Mrs. Doernbecher then discussed the matter with Mr. Kendall, who had another conference with Mr. Swinney, and

shortly thereafter a conference with Mr. Evans, one of the insurance company's attorneys.

On this occasion, Mr. Evans assured Mr. Kendall that an action would soon be instituted unless the policies were surrendered and releases executed by the insured and his wife. Thereafter, Mr. Kendall informed his client concerning his conference with Mr. Evans, and advised that the policies be surrendered, suggesting some business reason, and that other more satisfactory insurance could be procured later. It clearly appears that, while Mr. Doernbecher was opposed to surrendering the policies, he was persuaded to do so by his wife and lawyer. July 27, 1936, Mr. Kendall wrote to Mr. Evans, enclosing the policies for cancellation, subject to adjustment of certain matters in connection with the premiums which had been paid. August 10th, Mr. Doernbecher wrote Mr. Evans, enclosing release in the following form, signed by himself and his wife:

"We, Edward M. Doernbecher and Laura M. Doernbecher, of Tacoma, Washington, for and in consideration of the reinstatement of dividend additions in the amount of Four Hundred and no/100 Dollars ($400.00) to policy 2695,347, and the reinstatement of dividend additions in the amount of Three Hundred Eighteen and 80/100 Dollars ($318.80) to policy 2979,-879, issued by The Mutual Life Insurance Company of New York on the life of Edward M. Doernbecher, such reinstatement of dividends to be made as of the date same were withdrawn, and which dividend additions were applied in payment of the initial premiums on policies 5061,905 and 5061,906, likewise issued by The Mutual Life Insurance Company of New York on the life of Edward M. Doernbecher, which latter policies bear date August 20, 1935, and for other good and valuable consideration, have remised, released and forever discharged, and by these presents do for ourselves, our heirs, executors and administrators, remise, release and forever discharge the said The Mutual Life

Insurance Company of New York of and from all manner of action and actions, suits, debts, agreements, claims and demands whatsoever in law or in equity which against the said insurance company we ever had, now have, or which we or our heirs, executors or administrators hereafter can, shall or may have, for, upon or by reason of all claims and liabilities of any kind whatsoever which may have arisen or may arise from or by reason of policies 5061,905 and 5061,906 in the amount of $6,000.00 each, issued August 20, 1935, on the life of Edward M. Doernbecher, in favor of his wife, Laura M. Doernbecher, which said policies are hereby surrendered to the said insurance company for cancellation.

"IN WITNESS WHEREOF we have hereunto set our hands and seals this 10th day of August, 1936.

(Sd.) EDWARD M. DOERNBECHER
WITNESS: (Sd.) LAURA M. DOERNBECHER
(Sd.) VERNICE BOULIANNE
(Sd.) EDWARD J. JANSEN"

Mr. Doernbecher died April 29, 1937, and the following month Mrs. Doernbecher submitted proofs of death on two other of defendant's policies, making no statement concerning any claim on the policies above referred to.

During the summer of 1939, this action was instituted by Mrs. Doernbecher against the insurance company, she stating in her amended complaint two causes of action, one based upon each policy, alleging simply the issuance of the policies, the death of the insured, and her right to receive payment of the insurance.

By its answer, the defendant admitted the issuance of the policies, denying the other material allegations of the complaint, and pleading five affirmative defenses, the first covering the negotiations between the company and Mr. Doernbecher concerning the surrender of the policies, together with the surrender and release thereof. This defense also pleaded the fact

that, at the time of the issuance and delivery of the policies, the insured was not in good health, but was suffering from cancer.

By the second affirmative defense, the company pleaded that, at the time of his application for the policies and his examination by the company's physician, Mr. Doernbecher stated that he was in good health, and that the fact that the applicant was then suffering from a cancer was not disclosed to the insurance company or known by it. Other facts concerning the acquisition of the company's knowledge of the matter were pleaded. The other affirmative defenses need not be particularly noticed.

In her reply, the plaintiff pleaded the issuance of the policies; the fact that it was later discovered that her husband was suffering from cancer; that he was never advised of this fact; that his physician advised plaintiff that her husband should not be informed of his condition; that the insurance company thereafter demanded surrender of the policies, and threatened to take steps which would inform the insured of his condition unless the policies were surrendered for cancellation; that, while plaintiff and her counsel believed that the policies were in fact valid and enforcible, because of the threats of the insurance company they persuaded the insured to surrender the policies; and that the insured did surrender the same solely because of the persuasions of his wife and his lawyer.

By the pleadings, the issue was clearly tendered by the plaintiff, that the surrender of the policies by her husband was procured by duress and intimidation exerted, not upon the insured, but upon her, the beneficiary, and insured's counsel.

The action was tried to the court sitting with a jury, and, at the close of the plaintiff's evidence, the defendant moved that the action be dismissed upon the

ground that the evidence showed that the plaintiff was not entitled to recover, asking in the alternative for a judgment of nonsuit. The trial court granted the motion to dismiss the action, and entered a judgment dismissing the same with prejudice. From this judgment, plaintiff has appealed.

Error is assigned upon the court's ruling withdrawing the case from the consideration of the jury, and in entering the judgment dismissing the action. Appellant also assigns error upon the court's ruling rejecting, on respondent's objection, certain testimony offered by appellant.

Pursuant to the first two errors assigned, appellant argues that, since it appears that the insured's state of health was the same at the time of the delivery of the policy of insurance as it was at the time he signed the application and submitted to a physical examination by respondent's doctor, respondent could not advance a claim well founded in law that the policy was not delivered "during the insured's continuance in good health," and also argues that the release which was signed by the insured and the surrender of the policies were not the free and voluntary acts of the insured, but were the result of fraud, duress, undue influence, and compulsion exerted by respondent.

Upon the first question above stated, appellant refers to several decisions of this court which are against appellant's position, but argues that these decisions are opposed to the great weight of authority and that, upon facts such as appear in the case at bar, should not be followed.

In the case of *Logan v. New York Life Ins. Co.*, 107 Wash. 253, 181 Pac. 906, this court reversed a judgment entered by the superior court upon the verdict of a jury in favor of the beneficiary under an insurance policy and directed that the action be dismissed. It

appeared that the policy provided that it should not take effect unless delivered to and received by the insured during his lifetime and good health and that the evidence showed that the insured died August 6, 1916, nine days after the delivery of the policy, from the effect of a tumor of the brain, from which he must have been suffering July 28, 1916, the date of the delivery of the policy and the payment of the first premium.

This court considered very similar questions in the later cases of *Guarascio v. Prudential Ins. Co.*, 110 Wash. 1, 187 Pac. 405; *Fraser v. Metropolitan Life Ins. Co.*, 165 Wash. 667, 5 P. (2d) 978; and *Mutual Life Ins. Co. v. Campbell*, 170 Wash. 485, 16 P. (2d) 836, the decisions citing and following the *Logan* case.

Appellant argues that, if the physical condition of an insured does not change between the date of the application for the insurance and the physical examination of the applicant, made by the company's physician, and the date of the delivery of the policy, under the great weight of authority the fact that the insured was on the latter date in poor health is unimportant, and that the insurance is valid.

Upon the record in the case at bar, the first question to be determined is whether or not the release signed by the insured, together with the surrender of the policies by him, were valid. If they were valid, the question of whether or not respondent might have successfully waged a lawsuit to cancel the policies is unimportant.

The trial court held that Mr. Doernbecher's acts in surrendering the policies were valid, and that the evidence introduced by appellant affirmatively showed that the action should be dismissed with prejudice.

Appellant argues that, in informing the insured and appellant that it contended that the policies of insurance were invalid because of the circumstances

above referred to, respondent knew that it was advancing a claim which was not well founded in law, because the courts of several jurisdictions had held against respondent when it had attempted to establish the same contention. Clearly, respondent could quote the decisions of this court above referred to in support of a contention that it might well prevail in this jurisdiction in an action to cancel the policies. Whether or not respondent might have prevailed in such an action is immaterial, but clearly, under the decisions of this court, it cannot be held that respondent, in stating that it intended to bring an action to cancel the policies, was taking a position which it knew was unfounded in law, or was pressing its claim in bad faith.

The record does not support appellant's contention that respondent was guilty of fraud in stating that it would institute suit to cancel the policies. The authorities relied upon by appellant on this phase of the case are not in point.

■ Appellant next argues that the release which Mr. Doernbecher and she signed, and which her husband forwarded to respondent's attorneys August 10, 1936, was procured by duress and compulsion exerted by respondent on appellant and Mr. Kendall, her husband's attorney, and through them on the insured. A good statement of the general rule upon this subject is found in 17 Am. Jur. 892:

"It is the well-established general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights. It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither

duress nor fraud such as will avoid liability on a compromise agreement."

Several of our decisions follow this principle: *Walla Walla Fire Ins. Co. v. Spencer*, 52 Wash. 369, 100 Pac. 741; *Ingebrigt v. Seattle Taxicab & Transfer Co.*, 78 Wash. 433, 139 Pac. 188; *Zent v. Lewis*, 90 Wash. 651, 156 Pac. 848; and *Investment & Securities Co. v. Adams*, 192 Wash. 41, 72 P. (2d) 288.

As above stated, it clearly appears that, regardless of the weight of authority from other jurisdictions, respondent had ample support in the decisions of this court above referred to for determining, and for so stating to Mr. Doernbecher and his attorney, and to appellant, that it would institute a suit for the purpose of canceling the policies.

In 5 Williston on Contracts, p. 4501, the rule is stated as follows:

"Therefore, a threat to bring a civil action or to resort to remedies given by the contract is not such duress as to justify rescission of a transaction induced thereby, even though there is no legal right to enforce the claim, provided the threat is made in good faith; that is, in the belief that a possible cause of action exists. But, if the threat is made with the consciousness that there is no real right of action and the purpose is coercion, a payment or contract induced thereby is voidable. In the former case, it may be said that the threatened action was rightful; in the latter case, it was not."

Under our decisions, it cannot be held that respondent could not indulge "the belief that a possible cause of action" existed in its favor. Certainly, our decisions above cited strongly support respondent's position. Shortly after February 28, 1936, when respondent served upon the insured notice of cancellation of the policies, its agent, Mr. Swinney, called upon Mr. Doernbecher and was referred to Mr. Kendall,

who had previously been consulted by the insured. During the month of June, Mr. Swinney and one of respondent's counsel called on the insured, and during the same month they also called upon appellant. During this month, appellant on several occasions discussed the matter with Mr. Kendall, with whom Mr. Swinney had a conference a few days later. July 15th, another of respondent's counsel called on Mr. Kendall, and handed him a memorandum of authorities which it was contended supported respondent's right to cancel the policies, leaving with Mr. Kendall a copy of a complaint which had been prepared, asking for cancellation of the policies.

Concerning the memorandum of authorities left with Mr. Kendall, the latter frankly testified that the authorities did lend support to respondent's contention, stating also, however, that in his opinion a court would not cancel the policies, but that he "appreciated the fact that there were two results, possibly. In other words, that it was not what we call an open and shut case." Mr. Kendall further testified: "Yes, there is law persuasive to your point of view and I feel also there is law definitely persuasive in supporting the advice I had given Mr. Doernbecher. . . ." Mr. Kendall later testified:

"A. My first advice to Mrs. Doernbecher was to the same effect I had given to the husband,—that I felt they should retain the policies. That advice was ultimately changed to Mr. Doernbecher and as a result of Mrs. Doernbecher's earnest request to me that I help her and cooperate with her to get Mr. Doernbecher to give up his policies so that no lawsuit would be started. . . . I advised her as beneficiary under these policies. Q. Your advice to her up until the time you learned the suit would be filed, was to hold the policies? A. She knew the advice I had given her husband and I told her also in our conferences I had so advised Mr. Doernbecher."

July 24th, Mr. Kendall wrote to respondent's counsel, stating that he had suggested to the insured that the policies be canceled, and that he was quite confident that the insured would decide to surrender the contracts. This was followed by a letter from Mr. Kendall dated July 27th, enclosing the policies for cancellation, subject to some adjustment as to dividends on other policies. After some further correspondence between Mr. Kendall and respondent's counsel, Mr. Doernbecher wrote the letter of August 10th above referred to, enclosing the release.

There can be no question but that, when Mr. Doernbecher was operated on September 15, 1935, it was discovered that he was suffering from cancer, which had reached such an advanced stage that the cancer could not be removed. Naturally, appellant did not wish her husband to know that he was suffering from a mortal disease. The kindly conspiracy to keep this knowledge from Mr. Doernbecher as long as possible, which was entered into by appellant, the doctor, and Mr. Kendall, undoubtedly resulted in making the sufferer's last months less burdensome.

Respondent had only a limited time within which to institute an action to cancel the policies, which were incontestable after one year from date of issue. The institution of such a suit by respondent would doubtless have resulted in conveying to Mr. Doernbecher knowledge concerning the exact nature of the disease from which he was suffering. It would seem that, under appellant's contention, either respondent was required to waive its right to contest the policies and assume liability for the full amounts thereof, or appellant had to advise her husband to surrender the policies and waive the rights which would accrue to her thereunder upon her husband's death, which event it

must have been well known would not very long be delayed.

Appellant had the advice of her husband's physician and her husband's counsel, a lawyer of ability and long experience. Motivated by her love for her husband, and, after consultation with the persons best able to advise her, appellant made her choice. She must abide by it. Respondent's expressed intention to bring suit to cancel the policies did not constitute duress or compulsion.

Mr. Doernbecher signed and delivered the release and surrendered the policies, and it cannot be held that his acts in so doing resulted from duress or compulsion exerted by respondent. Appellant also signed the release, and the question of whether or not, under the law, she was required to do so is discussed in the briefs, but need not here be considered.

■ Appellant called as a witness her daughter, who at the time her father signed the release was acting as his secretary. Appellant sought to elicit from this witness testimony as to what was said and done at the time her father signed the release. The testimony was not received, and upon the ruling of the court appellant has assigned error. The testimony was rightly rejected, as the questions propounded called for hearsay testimony and the repetition of self-serving declarations on the part of the deceased. *Corbett v. Weaver,* 59 Wash. 248, 109 Pac. 803; *Eastman, Inc. v. Northwestern Mut. Life Ins. Co.,* 169 Wash. 125, 13 P. (2d) 488.

The judgment appealed from is affirmed.

ROBINSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.