[No. 933-2.    Division Two.    February 14, 1974.]

DORIS M. WILLIAMS, *Respondent*, v. METROPOLITAN LIFE INSURANCE COMPANY, *Appellant*.

*Ralph G. Swanson* (of *Pebbles, Swanson & Lindskog*), for appellant.

*Robert L. Charette* and *Thomas A. Brown* (of *Charette & Brown*), for respondent.

PEARSON, C.J.—This is an action on a life insurance policy by Doris Williams, the widow, as the primary beneficiary. The defendant, Metropolitan Life Insurance Company, defended on the ground that the decedent had misrepre-

sented the condition of his health in various application documents, and, alternatively, that the policy never took effect. Both parties moved for summary judgment; the plaintiff's motion was granted.

The record before the trial court, which consisted of depositions, affidavits, and various exhibits, disclosed the following undisputed facts. On November 10, 1969, Jack Williams, a resident of Westport, applied to the defendant for a life insurance policy in the amount of $26,000. The principal purpose for this application was to obtain sufficient insurance to cover his mortgage obligation to a local bank. On this application, Mr. Williams made a relatively complete disclosure of his medical history, including an arthritic condition. However, he failed to disclose that a Dr. Race, of Tacoma, had removed a large, discharging mole from his back the previous spring, although he included Dr. Race's name in the application as his family physician. The following condition appeared in the application:

> If the Company offers a policy other than that applied for, or if the amount received by the Company on the date of Part A of the application was less than one monthly premium on the policy applied for or if no such amount was received by the Company, *then the policy will not be effective unless, at the time of delivery, the Proposed Insured is in the same condition of health as that represented in the latest Part B of this application and has not consulted with or been attended or examined by a physician* or other practitioner since the completion of the application (including Part A and the latest Part B required by the Company).

(Italics ours.) "Part A" of the application was the general information section, "Part B" the medical information section. At the time this application was submitted to the company, Mr. Williams paid a $23 premium. A short time later he took, and passed, an insurance medical examination.

Thereafter, the following events transpired. Mr. Williams noticed a lump in his left armpit and consulted Dr. Race on December 13, 1969. Dr. Race scheduled a removal and

biopsy for December 15, 1969, at a Tacoma hospital. Mr. Williams was hospitalized for 3 days. Shortly after his discharge, he again noticed underarm swelling. On January 10, 1970, Mr. Williams was referred to a radiologist, Dr. Frank Rigos, for cobalt treatments. On the morning of January 12, 1970, Dr. Rigos prescribed a 5-week schedule of cobalt treatments in Tacoma.

On the afternoon of January 12, 1970, the defendant's agent (who was a personal friend of Mr. Williams) came to the Williamses' home in Westport. He told Mr. Williams that because of his arthritic condition, the policy had been "up-rated," and that an additional premium would have to be collected. The agent presented Mr. Williams with an "application amendment" for his signature, explaining that it was an "up-rate" form. Mr. Williams did not read this form at the time, nor, indeed, was the agent aware of its contents.

The following language appeared above Mr. Williams' signature on the "application amendment":

> THIS APPLICATION AMENDMENT is to be considered a part of the Application Dated as above, is subject to the agreements therein contained, and eliminates the need for completing a new application. The Application as hereby amended is a part of the policy of insurance. *The statements and answers which appear in the Application, except as amended hereby, were not only full, true and complete when the Application was signed, but also are full, true and complete as though made on the Date of this Form,* as shown above, or the date of the Receipt for the first premium as shown in the policy, whichever date is later; and *there has been no medical consultation or change in facts between the date of the Application and the Date of this Form* or Receipt Date whichever date is later, which would require answers different from those contained in the Application.

(Italics ours.) It is not controverted that Mr. Williams did not disclose the medical events of the preceding weeks to the agent at this time, or at any subsequent time.

Upon Mr. Williams' signing this form, the agent collected the additional premium and delivered the policy, with cop-

ies of the original application and the application amendment.

The following day, January 13, 1970, Mr. Williams' condition was specifically diagnosed as cancer. He died as a result of this disease on June 2, 1970.

On the basis of the uncontroverted facts in the record, we conclude that the trial court erred in granting the plaintiff's motion for summary judgment, and in refusing to grant defendant's motion.

We perceive two separate bases for this conclusion. First, the original application contained the above-quoted condition that, if the company offered a policy different from that applied for (as was done in this case), such policy would be ineffective unless at the time of delivery the proposed insured was in the same condition of health as represented at the time of application, and had not been examined by any medical practitioner in the interim. It is obvious that this condition was unfulfilled in both particulars, and that accordingly the policy never became effective.

■ The Supreme Court has on several occasions construed similar clauses in life and disability insurance applications, uniformly holding that such provisions constitute conditions precedent which, unless satisfied, are fatal to recovery on the policy. *Logan v. New York Life Ins. Co.*, 107 Wash. 253, 181 P. 906 (1919); *Guarascio v. Prudential Ins. Co. of America*, 110 Wash. 1, 187 P. 405 (1920); *Mutual Life Ins. Co. v. Campbell*, 170 Wash. 485, 16 P.2d 836 (1932).

As said in *Logan v. New York Life Ins. Co.*, *supra* at 261:

Respondent apparently concedes that, if the insurance company, before delivery of the policy, had discovered the fact that the insured was in bad health, the company might then have refused to deliver the policy. Respondent also apparently concedes that, if the insured had refused to pay the premium upon the policy when it was offered for delivery, then the company might have refused to deliver the policy and the contract would not take effect. There were three conditions here which were

made precedent to the contract becoming effective: first, the payment of the premium; second, the delivery of the policy; and third, the delivery during the lifetime and good health of the insured. All these conditions must concur before the contract of insurance became effective.

See also Fraser v. Metropolitan Life Ins. Co., 165 Wash. 667, 5 P.2d 978 (1931); Doernbecher v. Mutual Life Ins. Co., 16 Wn.2d 64, 132 P.2d 751 (1943); see generally R. Anderson, Couch on Insurance § 11:1 et seq.[1] (2d ed. 1959).

■ Furthermore, in our opinion this case is controlled by the rule of Hein v. Family Life Ins. Co., 60 Wn.2d 91, 97, 376 P.2d 152 (1962). As said in that case

We are convinced that we should, particularly in life insurance cases, adhere to the rule that *an insured, by accepting and retaining a policy with the application made a part thereof, thereby makes any false representations in the application his own.*

(Italics ours.)

With respect to the general fact pattern in this type of case, the Hein court made the following apposite observations:

Cases such as these arise only when the insured has died within a relatively short time after the issuance of the policy, because life insurance policies by statute are incontestable after two years. . . . They sign the application prepared by the insurance agent without reading it and have no curiosity about its contents when it is delivered to them as part of their insurance policy. We think it is entirely proper to hold, as so many courts have

---

[1] The strict Washington rule that the insured's lack of knowledge of his condition of ill health at the time of delivery is immaterial (as was the case in Logan v. New York Life Ins. Co., 107 Wash. 253, 181 P. 906 (1919)) has been criticized. See generally 30 A.L.R.3d 389 (1970). However, in this case the condition is drawn with more particularity than the general "continuing good health" clause involved in most of the Washington cases. (For the legal import of the term "good health" in such a clause, see Baker v. Mutual Life Ins. Co., 32 Wn.2d 340, 201 P.2d 893 (1949).) Here Mr. Williams was unquestionably aware that his health had taken a negative turn, and, moreover, that he had "been attended or examined by a physician" between the time of the insurance examination and delivery of the policy. See Mutual Life Ins. Co. v. Campbell, 170 Wash. 485, 492, 16 P.2d 836 (1932).

done: That good faith toward the insurer, as well as reasonable care on the part of the applicant, requires an examination of the application on which their contract is based; and that a failure to report any false statements amounts to a ratification.

(Footnote omitted.)

While in *Hein* it was the beneficiary's allegation that the agent had falsely recorded the insured's truthful representations as to his health, and in this case the beneficiary contends that the agent failed to disclose the actual nature of the "application amendment," the *Hein* rule is nonetheless compelling. Here Mr. Williams retained the "application amendment" as part of his policy. Any brief perusal of this abbreviated document would have disclosed to Mr. Williams the false representations therein. Under the *Hein* rule, Mr. Williams was required to make that perusal.[2]

Plaintiff directs our attention to *Olson v. Bankers Life Ins. Co.*, 63 Wn.2d 547, 388 P.2d 136 (1964), wherein the court declined to invoke the *Hein* rule where the insured had objected to the agent's entry of false answers into the application, and had been *specifically assured* by the agent that the misrepresentations were immaterial. This is manifestly a different case.

With respect to the effect of misrepresentations on recovery under the contract of insurance, the applicable statute is RCW 48.18.090, which provides in part as follows:

In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with

[2] Plaintiff contends that the "application amendment" form used by the insurance company differs from that approved for use by the insurance commissioner, pursuant to the requirements of RCW 48.18.100. The form in this case differs from the approved form only in that some of the amended answers which are commonly required are preprinted. Even if this were deemed a significant deviation, it does not void the document. *See Hennessy v. Vanderhoef*, 1 Wn. App. 257, 461 P.2d 581 (1969); RCW 48.18.100. *See* RCW 48.18.510, where provision is made for the validity of noncomplying forms.

actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

While the question of whether a misrepresentation in an application materially affected the acceptance of the risk by the insurer is ordinarily one of fact for a jury (*Olson v. Bankers Life Ins. Co., supra*), the uncontroverted affidavit of one of defendant's underwriters and deposition of the agent establish that the policy would not have been issued or delivered had the application amendment disclosed the changes in Mr. Williams' condition.[3]

We conclude upon these independent bases that the defendant's motion should have been granted.

The judgment is reversed and remanded, with instructions to dismiss the action.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied March 7, 1974.

Review granted by Supreme Court April 29, 1974.

---

[3]In this connection we do not consider Mr. Williams' failure to disclose the mole removal in the spring of 1969, because Dr. Race's assurances of its insignificance might well raise an issue of fact if a defense was grounded solely upon this omission. *See Baker v. Mutual Life Ins. Co.,* 32 Wn.2d 340, 201 P.2d 893 (1949).