# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

SONA CHU and JIM CHUNG-SIK CHU, )     No. 69605-0-I
wife and husband, )

            Respondents, )

            v. )

HYUN H. SEO-JEONG and MYUNG )
CHUL SEO, )     UNPUBLISHED OPINION
)
            Appellants. )     FILED: January 21, 2014

VERELLEN, J. — Sona Chu and Jim Chung-Sik Chu (Chu) sued Hyun H. Seo-Jeong and Myung Chul Seo (Seo-Jeong) claiming breach of a settlement agreement. Because Seo-Jeong presented no genuine issue of material fact for trial, we affirm summary judgment in favor of Chu.

## FACTS

In 1995, Seo-Jeong opened Café Arizona, a casino and restaurant in Federal Way. The business experienced financial difficulties and Seo-Jeong sought additional capital. In 2001, Chu lent $200,000 to Seo-Jeong.

In 2005, Chu sued Seo-Jeong for breach of contract due to Seo-Jeong's failure to repay the loan as agreed. On February 1, 2008, following mediation, the parties

entered into a settlement agreement pursuant to Civil Rule 2A (CR 2A).[1] The

settlement agreement, signed by Jim Chung-Sik Chu and Myung Chul Seo, their

respective attorneys and the mediator, provided, in relevant part:

> This agreement made and entered into this 1st day of February, 2008 between the parties named above to resolve issues between them arising out the action brought herein, including any cross-claims, counter-claims, set-offs or affirmative defenses. The agreement attached hereto constitutes a fair and full settlement of all issues brought herein. The parties stipulate pursuant to Civil Rule 2[A] this is a binding agreement between the parties. The parties agree they have met in settlement conference/mediation and have voluntarily, without coercion, and of their own free will entered into the agreement attached hereto and understand this agreement and settlement is fully enforceable by the court [sic] by either party.
>
> . . . .
>
> 8. All defendants shall have 24 months from 2/1/08 to sell license for casino.
>
> 9. Upon sale or opening of casino, all defendants will pay plaintiffs $200,000.00 (not a [percentage] of ownership or other consideration).
>
> 10. If the $200,000.00 is not paid by the end of the 24th month, then starting on the 25th month [payments] in the amount of $4,167.00/month will be paid by defendants to plaintiffs for 4 years (48 months) until the $200,000 is paid in full. No interest.
>
> 11. All aspects of all dealings between the parties will remain strictly confidential.
>
> 12. All documents shall reflect this deal was always a personal loan to Hyung Seo-Jeong, not a casino investment/loan.[2]

---

[1] CR 2A provides that "[n]o agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same."

[2] Clerk's Papers at 18-21.

It is undisputed that Seo-Jeong defaulted on the payments required by the settlement agreement. On February 14, 2012, Chu sued Seo-Jeong for breach of contract under the settlement agreement.

Chu moved for summary judgment. In opposition to the motion, Seo-Jeong argued that the settlement agreement was unenforceable because it was the product of duress. Seo-Jeong claimed that Chu agreed to lend the $200,000 as part of a "confidential investment agreement" that the parties were not permitted to disclose to anyone.[3] Seo-Jeong knew that the failure to report Chu's loan to the Washington State Gambling Commission could result in the loss of their casino license.[4] As a result, Seo-Jeong asserted, they had "no choice but to agree" to the settlement agreement.[5]

The trial court determined that the settlement agreement was "a knowing, voluntary and intelligent final decision embodied and evidenced per CR 2A in writing by both parties and that each party had the benefit and representation of their individual legal counsel before entering into said final agreement."[6] The trial court also concluded that Seo-Jeong breached the agreement by failing to make the necessary payments.

---

[3] Appellant's Br. at 7.

[4] WAC 230-06-107 requires the holder of a casino license to "report any change in ownership when the change would result in any person or organization becoming a substantial interest holder" to the Washington State Gambling Commission. A "substantial interest holder" is a person who has actual or potential influence over the management or operation of the gambling entity. WAC 230-03-045. Evidence of "substantial interest" may include indirect ownership of the entity or "[p]roviding ten percent or more of cash, goods, or services for the start up of operations or the continuing operation of the business during any calendar year or fiscal year." WAC 230-03-045(2)(a), (h). Failure to provide the Gambling Commission with the necessary information may result in the suspension or revocation of a casino license. WAC 230-03-085.

[5] Appellant's Br. at 8.

[6] Clerk's Papers at 66.

3

The trial court granted summary judgment in favor of Chu and entered a final judgment against Seo-Jeong. Seo-Jeong appeals.

## DISCUSSION

On appeal, Seo-Jeong claims that the trial court erred in granting summary judgment in favor of Chu because a genuine issue of material fact existed as to whether the settlement agreement was invalid due to duress.

We review both a grant of summary judgment and an action to enforce a CR 2A settlement agreement de novo.[7] "When a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed, the trial court proceeds as if considering a motion for summary judgment."[8] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party, and affirm only if, from all the evidence, reasonable minds could reach but one conclusion.[9] The party moving to enforce a settlement agreement has the burden of proving there is no genuine dispute as to the material terms of the agreement.[10] If the moving party meets its burden, "the nonmoving party must respond with affidavits, declarations, or other evidence to show there is a genuine issue of material fact."[11]

"Settlement agreements are governed by general principles of contract law."[12] Duress is an affirmative defense in an action to enforce a contract.[13] The party raising

---

[7] Lavigne v. Green, 106 Wn. App. 12, 16, 23 P.3d 515 (2001).

[8] Brinkerhoff v. Campbell, 99 Wn. App. 692, 696, 994 P.2d 911 (2000).

[9] In re the Marriage of Ferree, 71 Wn. App. 35, 44, 856 P.2d 706 (1993).

[10] Brinkerhoff, 99 Wn. App. at 696-97.

[11] Patterson v. Taylor, 93 Wn. App. 579, 584, 969 P.2d 1106 (1999) (citing Ferree, 71 Wn. App. at 44).

[12] Lavigne, 106 Wn. App. at 20.

an affirmative defense has the burden of proving the elements of that defense at trial.[14]

Therefore, to defeat Chu's motion for summary judgment, Seo-Jeong has the burden of

demonstrating the existence of a genuine issue of material fact as to whether the

settlement agreement was procured under duress.

To establish duress, a party must demonstrate that it was deprived of its free will

by the wrongful or oppressive conduct of the other party.[15] The "mere fact that a

contract is entered into under stress or pecuniary necessity is insufficient" to prove

duress.[16] "[T]here must be proof of more than reluctance to accept or financial

embarrassment."[17] Furthermore,

> "[i]t is the well-established general rule that it is not duress to institute or
> threaten to institute civil suits, or take proceedings in court, or for any
> person to declare that he intends to use the courts wherein to insist upon
> what he believes to be his legal rights. It is never duress to threaten to do
> that which a party has a legal right to do, and the fact that a threat was
> made of a resort to legal proceedings to collect a claim which was at least
> valid in part constitutes neither duress nor fraud such as will avoid liability
> on a compromise agreement."[18]

Chu met their burden to establish that Seo-Jeong breached the settlement

agreement. Seo-Jeong does not dispute their failure to make the payments required by

the settlement agreement. Rather, Seo-Jeong reiterates their argument below that they

executed the settlement agreement under duress because they feared they would

---

[13] Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 944, 640 P.2d 1051 (1982).

[14] August v. U.S. Bancorp, 146 Wn. App. 328, 343, 190 P.3d 86 (2008).

[15] Retail Clerks, 96 Wn.2d at 944-45.

[16] Id. at 944.

[17] Id.

[18] Doernbecher v. Mutual Life Ins. Co. of New York, 16 Wn.2d 64, 73-74, 132 P.2d 751 (1943) (quoting 17 AM. JUR. 892).

otherwise lose their casino license for failing to report the sum of money they received to the Gambling Commission. This is insufficient to establish a genuine issue of material fact as to the alleged affirmative defense of duress. Seo-Jeong's acceptance of Chu's loan and the failure to report the loan to the Gambling Commission was of Seo-Jeong's own volition. Chu wanted to maintain the confidentiality of the source of the $200,000. Seo-Jeong offered no evidence that Chu knew that the loan could potentially jeopardize their casino license, nor that Chu attempted to use this knowledge to force Seo-Jeong to sign the settlement agreement. In addition, because Seo-Jeong failed to repay Chu, Chu was entitled to bring legal action to enforce the settlement agreement, and such action did not constitute duress. The trial court appropriately granted summary judgment.

Seo-Jeong also claims that the trial court erred in considering a copy of the settlement agreement on summary judgment. The settlement agreement contained the following language: "The parties agree they have met in settlement conference/mediation and have voluntarily, without coercion, and of their own free will entered into the agreement attached hereto."[19] Seo-Jeong argues that because this was used to prove the truth of the matter asserted, i.e., that Seo-Jeong did not enter into the settlement agreement under duress, it is inadmissible hearsay. But Seo-Jeong cites no authority that an admission contained in a recitation in a contract signed by a party to the pending dispute is somehow impacted by the hearsay rule. "If a party fails to object or bring a motion to strike deficiencies in affidavits or other documents in

---

[19] Clerk's Papers at 18.

support of a motion for summary judgment, the party waives any defects."[20] Because Seo-Jeong did not raise this issue below, we decline to review it.

Chu requests attorney fees and costs incurred in defending this appeal. However, Chu fails to cite authority warranting such an award. A request for attorney fees on appeal requires a party to include a separate section in his or her brief devoted to the request; this requirement is mandatory.[21] A "bald request for attorney fees on appeal" is insufficient; rather, argument and citation to authority are required under the rule to advise this court of the appropriate grounds for an award of attorney fees and costs.[22] As such, we deny Chu's request.

Affirmed.

WE CONCUR:

Spearman, A.C.J.

---

[20] Bonneville v. Pierce County, 148 Wn. App. 500, 509, 202 P.3d 309 (2008).

[21] RAP 18.1(b); Phillips Bldg. Co. v. An, 81 Wn. App. 696, 705, 915 P.2d 1146 (1996).

[22] Thweatt v. Hommel, 67 Wn. App. 135, 148, 834 P.2d 1058 (1992); Austin v. U.S. Bank of Wash., 73 Wn. App. 293, 313, 869 P.2d 404 (1994).